# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

CITIBANK, N.A AS TRUSTEE FOR AMERICAN HOME MORTGAGE
ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH
CERTIFICATES SERIES 2006-3
Plaintiff-Appellee

VS

KATHERINE L. CAITO
Defendant-Appellant

On Appeal from a Final Judgment Entered
After an Opinion and Order Granting Summary Judgment and
Denying a Motion to Strike
Entered in the United States District Court for the District of Rhode Island

## APPENDIX OF APPELLANT
## KATHERINE L. CAITO

John B. Ennis
Rhode Island Bar # 2135
Court of Appeals Bar # 47641
John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920
Tel: (401)943-9230
Fax: (401)679-0035
Email: Jbelaw75@gmail.com

## CERTIFICATION OF SERVICE

I hereby certify that a copy of this Appendix of Appellant was served on counsel of record via the Court's ECF system on August 31, 2020.

/s/ John B. Ennis

## **TABLE OF CONTENTS OF APPENDIX**

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

1. Docket . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3. Answer to Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . 68

4. Appellee's Motion for Summary Judgment. . . . . . . . . . . . . . . . . 74

5. Sony Prudent's Affidavit for Summary Judgment. . . . . . . . . . . . 77

6. Appellant's Affidavit in Response to Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

7. Appellant's Statement of Undisputed Facts. . . . . . . . . . . . . . . . .100

8. Appellee's Response to Undisputed Facts of Appellant. . . . . . . . 104

9. Affidavit of Sony Prudent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .108

10. Motion to Strike Affidavit of Sony Prudent. . . . . . . . . . . . . . . . . 114

APPEAR,CLOSED

# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: <u>1:18-cv-00427-JJM-LDA</u>

1

Citibank, N.A. as Trustee v. Caito
Assigned to: District Judge John J. McConnell, Jr.
Referred to: Magistrate Judge Lincoln D. Almond
Case in other court:     U.S. Court of Appeals for the First
                          Circuit, COA20-1100
Cause: 28:1332 Diversity—Contract Dispute

Date Filed: 08/03/2018
Date Terminated: 01/27/2020
Jury Demand: Defendant
Nature of Suit: 220 Real Property:
Foreclosure
Jurisdiction: Diversity

**Plaintiff**

**Citibank, N.A.**
*as Trustee for American Home Mortgage*
*Assets Trust 2006−3, Mortgage Backed*
*Pass−Through Certificates Series*
*2006−3*

represented by **Ethan Z. Tieger**
Hinshaw & Culbertson LLP
321 South Main Street
Suite 301
Providence, RI 02903
401−751−0842
Fax: 401−751−0072
Email: etieger@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel C. Bodurtha**
Hinshaw & Culbertson LLP
56 Exchange Terrace
5th Floor
Providence, RI 02903
(401) 751−0842
Fax: (401) 751−0072
Email: sbodurtha@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Katherine L. Caito**

represented by **John B. Ennis**
1200 Reservoir Avenue
Cranston, RI 02920
401−943−9230
Fax: 946−5006
Email: Jbelaw75@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Internal Revenue Service**

1

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/03/2018 | 1 | | COMPLAINT ( filing fee paid $ 400.00, receipt number 0103–1247391 ), filed by Citibank, N.A. as Trustee for American Home Mortgage Assets Trust 2006–3, Mortgage Backed Pass–Through Certificates Series 2006–3. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Civil Cover Sheet, # 7 Summons)(Tieger, Ethan) (Entered: 08/03/2018) |
| 08/06/2018 | | | CASE CONDITIONALLY ASSIGNED to District Judge John J. McConnell, Jr. and Magistrate Judge Lincoln D. Almond. Related Case Number 13–cv–429 based upon the indication on the cover sheet that a related case previously was assigned to the presiding judge. The assignment is subject to the presiding judge's determination that the cases, in fact, are related. (Potter, Carrie) (Entered: 08/06/2018) |
| 08/06/2018 | 2 | | CASE OPENING NOTICE ISSUED (Potter, Carrie) (Entered: 08/06/2018) |
| 08/06/2018 | 3 | | Summons Issued as to Katherine L. Caito. (Potter, Carrie) (Entered: 08/06/2018) |
| 08/07/2018 | | | CASE PERMANENTLY ASSIGNED: Since District Judge John J. McConnell, Jr. has determined that this case is in fact related to CA 13–429–JJM, this case is permanently assigned to District Judge John J. McConnell, Jr. for all further proceedings (Barletta, Barbara) (Entered: 08/07/2018) |
| 09/04/2018 | 4 | 9 | AMENDED COMPLAINT *Verified for Judicial Foreclosure* against Katherine L. Caito, filed by Citibank, N.A.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Tieger, Ethan) (Entered: 09/04/2018) |
| 09/21/2018 | 5 | | Summons Request filed by Citibank, N.A.. (Tieger, Ethan) (Entered: 09/21/2018) |
| 09/21/2018 | 6 | | Summons Request filed by Citibank, N.A.. (Tieger, Ethan) (Entered: 09/21/2018) |
| 09/21/2018 | 7 | | Summons Issued as to Internal Revenue Service and U.S. Attorney (Attachments: # 1 Summons)(Potter, Carrie) (Entered: 09/21/2018) |
| 10/18/2018 | 8 | | AFFIDAVIT of Service, filed by Citibank. N.A. for sumons and complaint Internal Revenue Service served on 10/10/2018, answer due 10/30/2018. (Tieger, Ethan) (Entered: 10/18/2018) |
| 10/18/2018 | 9 | | AFFIDAVIT of Service, filed by Citibank, N.A. for summons and complaint Katherine L. Caito served on 10/10/2018, answer due 10/30/2018. (Tieger, Ethan) (Entered: 10/18/2018) |
| 10/30/2018 | 10 | | MOTION for an Extension of Time to File Response/Reply as to 4 Amended Complaint *to November 28, 2018* filed by Katherine L. Caito. **Responses due by 11/13/2018.** (Ennis, John) (Entered: 10/30/2018) |
| 10/31/2018 | | | TEXT ORDER granting 10 Motion for Extension of Time to File Response/Reply; Reset Deadlines: Katherine L. Caito answer due 11/28/2018 – So Ordered by District Judge John J. McConnell, Jr. on 10/31/2018. (Urizandi, Nisshy) (Entered: 10/31/2018) |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/03/2018 | 1 | | COMPLAINT ( filing fee paid $ 400.00, receipt number 0103–1247391 ), filed by Citibank, N.A. as Trustee for American Home Mortgage Assets Trust 2006–3, Mortgage Backed Pass–Through Certificates Series 2006–3. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Civil Cover Sheet, # 7 Summons)(Tieger, Ethan) (Entered: 08/03/2018) |
| 08/06/2018 | | | CASE CONDITIONALLY ASSIGNED to District Judge John J. McConnell, Jr. and Magistrate Judge Lincoln D. Almond. Related Case Number 13–cv–429 based upon the indication on the cover sheet that a related case previously was assigned to the presiding judge. The assignment is subject to the presiding judge's determination that the cases, in fact, are related. (Potter, Carrie) (Entered: 08/06/2018) |
| 08/06/2018 | 2 | | CASE OPENING NOTICE ISSUED (Potter, Carrie) (Entered: 08/06/2018) |
| 08/06/2018 | 3 | | Summons Issued as to Katherine L. Caito. (Potter, Carrie) (Entered: 08/06/2018) |
| 08/07/2018 | | | CASE PERMANENTLY ASSIGNED: Since District Judge John J. McConnell, Jr. has determined that this case is in fact related to CA 13–429–JJM, this case is permanently assigned to District Judge John J. McConnell, Jr. for all further proceedings (Barletta, Barbara) (Entered: 08/07/2018) |
| 09/04/2018 | 4 | 9 | AMENDED COMPLAINT *Verified for Judicial Foreclosure* against Katherine L. Caito, filed by Citibank, N.A.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Tieger, Ethan) (Entered: 09/04/2018) |
| 09/21/2018 | 5 | | Summons Request filed by Citibank, N.A.. (Tieger, Ethan) (Entered: 09/21/2018) |
| 09/21/2018 | 6 | | Summons Request filed by Citibank, N.A.. (Tieger, Ethan) (Entered: 09/21/2018) |
| 09/21/2018 | 7 | | Summons Issued as to Internal Revenue Service and U.S. Attorney (Attachments: # 1 Summons)(Potter, Carrie) (Entered: 09/21/2018) |
| 10/18/2018 | 8 | | AFFIDAVIT of Service, filed by Citibank, N.A. for sumons and complaint Internal Revenue Service served on 10/10/2018, answer due 10/30/2018. (Tieger, Ethan) (Entered: 10/18/2018) |
| 10/18/2018 | 9 | | AFFIDAVIT of Service, filed by Citibank, N.A. for summons and complaint Katherine L. Caito served on 10/10/2018, answer due 10/30/2018. (Tieger, Ethan) (Entered: 10/18/2018) |
| 10/30/2018 | 10 | | MOTION for an Extension of Time to File Response/Reply as to 4 Amended Complaint *to November 28, 2018* filed by Katherine L. Caito. **Responses due by 11/13/2018.** (Ennis, John) (Entered: 10/30/2018) |
| 10/31/2018 | | | TEXT ORDER granting 10 Motion for Extension of Time to File Response/Reply; Reset Deadlines: Katherine L. Caito answer due 11/28/2018 – So Ordered by District Judge John J. McConnell, Jr. on 10/31/2018. (Urizandi, Nisshy) (Entered: 10/31/2018) |

| 11/30/2018 | 11 | | APPLICATION for Clerk's Entry of Default filed by Citibank, N.A. as to Katherine L. Caito. (Tieger, Ethan) (Entered: 11/30/2018) |
| 11/30/2018 | 12 | | MOTION for an Extension of Time to File Response/Reply as to 4 Amended Complaint, Order on Motion for Extension of Time to File Response/Reply, Set/Reset Deadlines *to December 7, 2018* filed by Katherine L. Caito. **Responses due by 12/14/2018.** (Ennis, John) (Entered: 11/30/2018) |
| 11/30/2018 | 13 | | DECLARATION re 11 Application for Clerk's Entry of Default by Citibank, N.A.. (Attachments: # 1 Exhibit A)(Tieger, Ethan) (Entered: 11/30/2018) |
| 11/30/2018 | 14 | | RESPONSE IN OPPOSITION by Katherine L. Caito re 11 Application for Clerk's Entry of Default . (Ennis, John) (Entered: 11/30/2018) |
| 11/30/2018 | 15 | 66 | ANSWER to 4 Amended Complaint by Katherine L. Caito.(Ennis, John) (Entered: 11/30/2018) |
| 12/03/2018 | | | TEXT ORDER granting 12 Motion for Extension of Time to File; Reset Deadlines: Katherine L. Caito answer due 12/5/2018 − So Ordered by District Judge John J. McConnell, Jr. on 12/3/2018. (Barletta, Barbara) (Entered: 12/03/2018) |
| 12/11/2018 | 16 | | NOTICE of Hearing: Telephonic Rule 16 Conference set for Tuesday, 1/15/2019 at 09:15 AM before District Judge John J. McConnell, Jr. The Court will initiate the call. Counsel shall provide the Clerk with contact information if it differs from the docket sheet. (Barletta, Barbara) (Entered: 12/11/2018) |
| 01/11/2019 | 17 | | RULE 16 STATEMENT by Citibank, N.A.. (Bodurtha, Samuel) (Entered: 01/11/2019) |
| 01/15/2019 | | | Minute Entry for proceedings held before District Judge John J. McConnell, Jr.: Telephonic Rule 16 Conference held on 1/15/2019; John B. Ennis and Samuel C. Bodurtha participated (Barletta, Barbara) (Entered: 01/15/2019) |
| 01/15/2019 | | | TEXT PRETRIAL SCHEDULING ORDER: All Factual Discovery to close by 4/15/2019; Plaintiff's Motion for Summary Judgment shall be filed on or before 5/15/2019; Defendant's Response shall be filed on or before 7/15/19 and Plaintiff's reply shall be filed on or before 7/30/19. No extensions of these deadlines will be granted − So Ordered by District Judge John J. McConnell, Jr. on 1/15/2019 (Barletta, Barbara) (Entered: 01/15/2019) |
| 05/02/2019 | 18 | | MOTION for Protective Order filed by Citibank, N.A.. **Responses due by 5/16/2019.** (Bodurtha, Samuel) (Entered: 05/02/2019) |
| 05/02/2019 | 19 | | MEMORANDUM IN SUPPORT by Citibank, N.A. in support of 18 MOTION for Protective Order . (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Bodurtha, Samuel) (Entered: 05/02/2019) |
| 05/02/2019 | 20 | | MOTION for an Extension of Time to Complete Discovery filed by Citibank, N.A.. **Responses due by 5/16/2019.** (Bodurtha, Samuel) (Entered: 05/02/2019) |
| 05/03/2019 | | | TEXT ORDER granting 20 Motion for Extension of Time. Plaintiff does not need to respond to Defendant's discovery requests until 14 days after the Court rules on the Motion for Protective Order − So Ordered by District Judge John J. McConnell, Jr. on 5/3/2019 (Barletta, Barbara) (Entered: 05/03/2019) |

| 05/15/2019 | 21 | 71 | MOTION for Summary Judgment *on Count 1 of Its First Amended Verified Complaint for Judicial Foreclosure* filed by Citibank, N.A.. **Responses due by 5/29/2019.** (Attachments: # 1 Supporting Memorandum, # 2 Statement of Undisputed Facts in Support of Its Motion for Summary Judgment, # 3 Affidavit, # 4 Exhibit A)(Tieger, Ethan) (Entered: 05/15/2019) |
| 05/15/2019 | 22 | 105 | MOTION for Summary Judgment filed by Katherine L. Caito. **Responses due by 5/29/2019.** (Attachments: # 1 Supporting Memorandum, # 2 Affidavit, # 3 Exhibit 1, # 4 Exhibit Statement of Undisputed facts)(Ennis, John) (Entered: 05/15/2019) |
| 05/16/2019 | 23 | | MOTION for an Extension of Time to File Response/Reply as to 18 MOTION for Protective Order *to May 22, 2019* filed by Katherine L. Caito. **Responses due by 5/30/2019.** (Ennis, John) (Entered: 05/16/2019) |
| 05/17/2019 | | | TEXT ORDER granting 23 Motion for Extension of Time to File Response to 18 MOTION for Protective Order ; Reset Deadlines: **Response due by 5/22/2019.** – So Ordered by District Judge John J. McConnell, Jr. on 5/17/2019. (Barletta, Barbara) (Entered: 05/17/2019) |
| 05/22/2019 | 24 | | MOTION for an Extension of Time to File Response/Reply as to 18 MOTION for Protective Order *to May 27, 2019* filed by All Defendants. **Responses due by 6/5/2019.** (Ennis, John) (Entered: 05/22/2019) |
| 05/23/2019 | | | TEXT ORDER granting 24 Motion for Extension of Time to File Response to 18 MOTION for Protective Order ; Reset Deadlines: **Response due by 5/27/2019.** – So Ordered by District Judge John J. McConnell, Jr. on 5/23/2019. (Barletta, Barbara) (Entered: 05/23/2019) |
| 05/27/2019 | 25 | | MOTION for an Extension of Time to File Response/Reply as to 18 MOTION for Protective Order *to June 3, 2019* filed by Katherine L. Caito. **Responses due by 6/10/2019.** (Ennis, John) (Entered: 05/27/2019) |
| 05/28/2019 | | | TEXT ORDER granting 25 Motion for Extension of Time to File Response to 18 MOTION for Protective Order; **Responses due by 6/3/2019.** So Ordered by District Judge John J. McConnell, Jr. on 5/28/2019. (Jackson, Ryan) (Entered: 05/28/2019) |
| 05/29/2019 | 26 | | MOTION for an Extension of Time to Oppose Defendant's Motion for Summary Judgment and for Clarification on Pretrial Scheduling Order filed by Citibank, N.A.. **Responses due by 6/12/2019.** (Tieger, Ethan) (Entered: 05/29/2019) |
| 05/30/2019 | | | TEXT ORDER granting 26 Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment up to and including 6/28/19. So Ordered by District Judge John J. McConnell, Jr. on 5/30/2019. (Jackson, Ryan) (Entered: 05/30/2019) |
| 06/03/2019 | 27 | | MOTION for an Extension of Time to File Response/Reply as to 18 MOTION for Protective Order *to June 7, 2019* filed by Katherine L. Caito. **Responses due by 6/17/2019.** (Ennis, John) (Entered: 06/03/2019) |
| 06/03/2019 | | | AMENDED TEXT ORDER: Plaintiff's response to 22 MOTION for Summary Judgment shall be filed by 7/15/19 and Defendant's reply shall be filed by 7/30/19. No further extensions of these deadlines will be granted – So Ordered by District Judge John J. McConnell, Jr. on 6/3/2019 (Barletta, Barbara) (Entered: 06/03/2019)5 |

# U.S. District Court
## District of Rhode Island (Providence)
## CIVIL DOCKET FOR CASE #: <u>1:18−cv−00427−JJM−LDA</u>

Citibank, N.A. as Trustee v. Caito
Assigned to: District Judge John J. McConnell, Jr.
Referred to: Magistrate Judge Lincoln D. Almond
Case in other court:    U.S. Court of Appeals for the First
                    Circuit, COA20−1100
Cause: 28:1332 Diversity−Contract Dispute

Date Filed: 08/03/2018
Date Terminated: 01/27/2020
Jury Demand: Defendant
Nature of Suit: 220 Real Property:
Foreclosure
Jurisdiction: Diversity

## Plaintiff

**Citibank, N.A.**
*as Trustee for American Home Mortgage*
*Assets Trust 2006−3, Mortgage Backed*
*Pass−Through Certificates Series*
*2006−3*

represented by **Ethan Z. Tieger**
Hinshaw & Culbertson LLP
321 South Main Street
Suite 301
Providence, RI 02903
401−751−0842
Fax: 401−751−0072
Email: etieger@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel C. Bodurtha**
Hinshaw & Culbertson LLP
56 Exchange Terrace
5th Floor
Providence, RI 02903
(401) 751−0842
Fax: (401) 751−0072
Email: sbodurtha@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**Katherine L. Caito**

represented by **John B. Ennis**
1200 Reservoir Avenue
Cranston, RI 02920
401−943−9230
Fax: 946−5006
Email: Jbelaw75@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Interested Party

**Internal Revenue Service**

| 06/04/2019 | | | TEXT ORDER granting 27 Motion for Extension of Time to File Response to 18 MOTION for Protective Order ; Reset Deadlines: **Responses due by 6/7/2019.** – So Ordered by District Judge John J. McConnell, Jr. on 6/4/2019 (Barletta, Barbara) (Entered: 06/04/2019) |
| 06/07/2019 | 28 | | MOTION for an Extension of Time to File Response/Reply as to 18 MOTION for Protective Order *to June 11, 2019* filed by Katherine L. Caito. **Responses due by 6/21/2019.** (Ennis, John) (Entered: 06/07/2019) |
| 06/10/2019 | | | TEXT ORDER granting 28 Motion for Extension of Time to File Response to 18 MOTION for Protective Order ; Reset Deadlines: **Response due by 6/11/2019.** – So Ordered by District Judge John J. McConnell, Jr. on 6/10/2019. (Barletta, Barbara) (Entered: 06/10/2019) |
| 06/11/2019 | 29 | | MOTION for an Extension of Time to File Response/Reply as to 18 MOTION for Protective Order *to June 14, 2019* filed by Katherine L. Caito. **Responses due by 6/25/2019.** (Ennis, John) (Entered: 06/11/2019) |
| 06/12/2019 | | | TEXT ORDER granting 29 Motion for Extension of Time to File Response to 18 MOTION for Protective Order ; Reset Deadlines: **Response due by 6/14/2019; NO FURTHER EXTENSIONS WILL BE GRANTED.** – So Ordered by District Judge John J. McConnell, Jr. on 6/12/2019. (Barletta, Barbara) (Entered: 06/12/2019) |
| 06/14/2019 | 30 | | MOTION for an Extension of Time to File Response/Reply as to 18 MOTION for Protective Order *to June 17, 2019* filed by Katherine L. Caito. **Responses due by 6/28/2019.** (Ennis, John) (Entered: 06/14/2019) |
| 06/17/2019 | 31 | | RESPONSE In Opposition to 18 MOTION for Protective Order filed by Katherine L. Caito. **Replies due by 6/24/2019.** (Attachments: # 1 Supporting Memorandum Memorandum, # 2 Exhibit Discovery Dispute letter)(Ennis, John) (Entered: 06/17/2019) |
| 06/17/2019 | 32 | | Addendum re 31 Response to Motion, *for Protective Order* by Katherine L. Caito. (Attachments: # 1 Exhibit Certified Copy of SEC filing, # 2 Exhibit Certified Copy of SEC Filing, # 3 Exhibit Certified Copy of SEC filing)(Ennis, John) (Entered: 06/17/2019) |
| 06/17/2019 | 33 | | Addendum re 31 Response to Motion, *for Protective Order* by Katherine L. Caito. (Attachments: # 1 Exhibit December 5, 2012 Consent Order Ocwen and New York, # 2 Exhibit December 19, 2014 Consent Order Ocwen and New York, # 3 Exhibit March 27, 2017 Consent Order Ocwen and New York, # 4 Exhibit Consent Order Ocwen and Rhode Island)(Ennis, John) (Entered: 06/17/2019) |
| 06/17/2019 | 34 | | Addendum re 31 Response to Motion, *for a Protective Order* by Katherine L. Caito. (Attachments: # 1 Exhibit Texas Complaint by Servicer after Bankruptcy, # 2 Exhibit Exhibit to complaint in Texas Litigation, # 3 Exhibit Wells Fargo AP in AHM Bankruptcy)(Ennis, John) (Entered: 06/17/2019) |
| 06/17/2019 | | | TEXT ORDER denying 30 Motion for Extension of Time to File Response. The Court in granting the last extension said no further extensions. The Defendant has offered no compelling reason for this Court to disregard that Order – – So Ordered by District Judge John J. McConnell, Jr. on 6/17/2019. (Barletta, Barbara) (Entered: 06/17/2019) |

| 06/17/2019 | | | TEXT ORDER granting 18 Motion for Protective Order– So Ordered by District Judge John J. McConnell, Jr. on 6/17/2019. (Barletta, Barbara) (Entered: 06/17/2019) |
|---|---|---|---|
| 07/15/2019 | 35 | 154 | RESPONSE In Opposition to 22 MOTION for Summary Judgment filed by Citibank, N.A.. **Replies due by 7/22/2019.** (Bodurtha, Samuel) (Entered: 07/15/2019) |
| 07/15/2019 | 36 | | MEMORANDUM IN SUPPORT by Citibank, N.A. in support of 35 Response to Motion . (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(Bodurtha, Samuel) (Entered: 07/15/2019) |
| 07/15/2019 | 37 | 156 | RESPONSE In Opposition to 22 MOTION for Summary Judgment *Defendant Katherine L. Caito's Statement of Undisputed Facts in Support of Her Summary Judgment Motion* filed by Citibank, N.A.. **Replies due by 7/22/2019.** (Bodurtha, Samuel) (Entered: 07/15/2019) |
| 07/15/2019 | 38 | 160 | AFFIDAVIT re 37 Response to Motion, 35 Response to Motion, 36 Memorandum in Support *of Sony Prudent in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment* by Citibank, N.A.. (Bodurtha, Samuel) (Entered: 07/15/2019) |
| 07/15/2019 | 39 | 164 | AFFIDAVIT re 38 Affidavit, 37 Response to Motion, 35 Response to Motion, 36 Memorandum in Support *of Samuel C.Bodurtha in Support of Plaintiff's Objection and Opposition to Defendant's Motion for Summary Judgment* by Citibank, N.A.. (Bodurtha, Samuel) (Entered: 07/15/2019) |
| 07/15/2019 | 40 | 167 | MOTION to Strike *Affidavit of Sony Prudent for Summary Judgment* filed by Katherine L. Caito. **Responses due by 7/29/2019.** (Attachments: # 1 Supporting Memorandum, # 2 Affidavit Affidavit of Defendant, # 3 Exhibit A–1, # 4 Exhibit A–2, # 5 Exhibit A–3, # 6 Exhibit A–4, # 7 Exhibit A–5, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit)(Ennis, John) (Entered: 07/15/2019) |
| 07/15/2019 | 41 | | RESPONSE In Opposition to 21 MOTION for Summary Judgment *on Count I of Its First Amended Verified Complaint for Judicial Foreclosure* filed by Katherine L. Caito. **Replies due by 7/22/2019.** (Attachments: # 1 Supporting Memorandum, # 2 Affidavit Affidavit of Kerri Hall, # 3 Exhibit K, # 4 Exhibit L, # 5 Affidavit Affidavit of Katherine Caito, # 6 Exhibit A–1, # 7 Exhibit A–2, # 8 Exhibit A–3, # 9 Exhibit A–4, # 10 Exhibit A–5, # 11 Exhibit Texas Litigation Citibank, # 12 Exhibit SEC record 1, # 13 Exhibit SEC record 2, # 14 Exhibit SEC record 3, # 15 Exhibit Sec record 4, # 16 Exhibit Ocwen Consent Order 2012, # 17 Exhibit Ocwen Consent Order 2017, # 18 Exhibit Ocwen Consent Order 2014, # 19 Exhibit Ocwen Consent Order RI, # 20 Exhibit AHM BK)(Ennis, John) (Entered: 07/15/2019) |
| 07/15/2019 | 42 | 278 | STATEMENT OF DISPUTED FACTS by Katherine L. Caito re 41 Response to Motion,,,. (Ennis, John) (Entered: 07/15/2019) |
| 07/15/2019 | 43 | 284 | STATEMENT OF DISPUTED FACTS by Katherine L. Caito. (Ennis, John) (Entered: 07/15/2019) |
| 07/15/2019 | 44 | | MOTION for an Extension of Time filed by Katherine L. Caito. **Responses due by 7/29/2019.** (Ennis, John) (Entered: 07/15/2019) |
| 07/16/2019 | | | |

| | | | |
|---|---|---|---|
| | | | TEXT ORDER granting <u>44</u> Motion for Extension of Time to 7/16/19 to file supplemental affidavit – So Ordered by District Judge John J. McConnell, Jr. on 7/16/2019 (Barletta, Barbara) (Entered: 07/16/2019) |
| 07/16/2019 | <u>45</u> | | MOTION for an Extension of Time To File Supplemental Affidavit and Statement of Disputed Facts and Undisputed Facts *to July 17, 2019* filed by Katherine L. Caito. **Responses due by 7/30/2019.** (Ennis, John) (Entered: 07/16/2019) |
| 07/17/2019 | | | TEXT ORDER granting <u>45</u> Motion for Extension of Time to 7/17/19 to file supplemental affidavit – So Ordered by District Judge John J. McConnell, Jr. on 7/17/2019 (Barletta, Barbara) (Entered: 07/17/2019) |
| 07/17/2019 | <u>46</u> | 289 | AFFIDAVIT re <u>41</u> Response to Motion,,, by Katherine L. Caito. (Ennis, John) (Entered: 07/17/2019) |
| 07/29/2019 | <u>47</u> | 295 | RESPONSE In Opposition to <u>40</u> MOTION to Strike *Affidavit of Sony Prudent for Summary Judgment* filed by Citibank, N.A.. **Replies due by 8/5/2019.** (Attachments: # <u>1</u> Affidavit, # <u>2</u> Exhibit 1 to Prudent Affidavit)(Bodurtha, Samuel) (Entered: 07/29/2019) |
| 07/30/2019 | <u>48</u> | | Joint MOTION for an Extension of Time *of Deadline to File Reply Memoranda in Support of Summary Judgment* filed by Citibank, N.A.. **Responses due by 8/13/2019.** (Bodurtha, Samuel) (Entered: 07/30/2019) |
| 07/31/2019 | | | TEXT ORDER granting <u>48</u> Motion for Extension of Time; Reset Deadlines: (**Reply shall be filed on or before 8/27/2019.**) – So Ordered by District Judge John J. McConnell, Jr. on 7/31/2019. (Barletta, Barbara) (Entered: 07/31/2019) |
| 08/26/2019 | <u>49</u> | | NOTICE by Citibank, N.A. *of Withdrawal of Appearance of Ethan Z. Tieger* (Tieger, Ethan) (Entered: 08/26/2019) |
| 08/27/2019 | <u>50</u> | 370 | REPLY to Response re <u>41</u> Response to Motion,,, filed by Citibank, N.A.. (Bodurtha, Samuel) (Entered: 08/27/2019) |
| 08/27/2019 | <u>51</u> | 380 | RESPONSE IN OPPOSITION by Citibank, N.A. re <u>43</u> Statement of Disputed Facts . (Attachments: # <u>1</u> Exhibit 1)(Bodurtha, Samuel) (Entered: 08/27/2019) |
| 08/27/2019 | <u>52</u> | | MOTION for an Extension of Time to File , MOTION for an Extension of Time Memoranda and Reply and Supplemental Responses to August 30, 2019 filed by Katherine L. Caito. **Responses due by 9/10/2019.** (Ennis, John) (Entered: 08/27/2019) |
| 08/28/2019 | | | TEXT ORDER granting <u>52</u> Motion for Extension of Time to File to file replies in support of <u>22</u> MOTION for Summary Judgment , <u>40</u> MOTION to Strike *Affidavit of Sony Prudent for Summary Judgment*; Reset Deadlines: (**Replies due by 8/30/2019.**). **NO FURTHER EXTENSIONS WILL BE GRANTED** – So Ordered by District Judge John J. McConnell, Jr. on 8/28/2019. (Barletta, Barbara) (Entered: 08/28/2019) |
| 08/30/2019 | <u>53</u> | 448 | REPLY to Response re <u>47</u> Response to Motion, *With Memorandum Incorporated* filed by Katherine L. Caito. (Attachments: # <u>1</u> Exhibit AA, # <u>2</u> Exhibit BB, # <u>3</u> Exhibit CC, # <u>4</u> Exhibit DD, # <u>5</u> Exhibit EE, # <u>6</u> Exhibit FF, # <u>7</u> Exhibit GG)(Ennis, John) (Entered: 08/30/2019) |
| 08/30/2019 | <u>54</u> | 508 | |

| | | | |
|---|---|---|---|
| | | | REPLY to Response re 35 Response to Motion filed by Katherine L. Caito. (Attachments: # 1 Exhibit Regulation)(Ennis, John) (Entered: 08/30/2019) |
| 12/18/2019 | 55 | | ORDER denying 40 Motion to Strike ; granting 21 Motion for Summary Judgment; denying 22 Motion for Summary Judgment. Citibank shall present a form of judgment to the Court after conferring with opposing counsel– So Ordered by Chief Judge John J. McConnell, Jr. on 12/18/2019. (Barletta, Barbara) (Entered: 12/18/2019) |
| 01/17/2020 | 56 | | NOTICE OF APPEAL by Katherine L. Caito as to 55 Order on Motion to Strike,, Order on Motion for Summary Judgment,,, ( filing fee paid $ 505.00, receipt number 0103–1466254 )<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 1/24/2020. (Ennis, John) (Entered: 01/17/2020) |
| 01/17/2020 | 57 | | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and a certified copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in accordance with 1st Cir. R. 11.0(b). 56 Notice of Appeal. Documents Sent: 55, 56. (Attachments: # 1 Record)(Hicks, Alyson) (Entered: 01/17/2020) |
| 01/21/2020 | | | USCA Case Number COA20–1100 for 56 Notice of Appeal., filed by Katherine L. Caito. (McGuire, Vickie) (Entered: 01/21/2020) |
| 01/27/2020 | 58 | | JUDGMENT in favor of Citibank, N.A. against Katherine L. Caito(Barletta, Barbara) (Entered: 01/27/2020) |
| 01/27/2020 | 59 | | Supplemental Record on Appeal transmitted to U.S. Court of Appeals for the First Circuit. 56 Notice of Appeal – Unrestricted Documents Sent: 58. (Barletta, Barbara) (Entered: 01/27/2020) |

## UNITED STATES DISTRICT COURT
### DISTRICT OF RHODE ISLAND

CITIBANK, N.A., AS TRUSTEE FOR
AMERICAN HOME MORTGAGE ASSETS
TRUST 2006-3, MORTGAGE BACKED
PASS-THROUGH CERTIFICATES SERIES
2006-3,

       Plaintiff,

v.

KATHERINE L. CAITO,

       Defendant,

v.

INTERNAL REVENUE SERVICE,

       Interested Party.

C.A. No. 1:18-cv-00427-JJM

## FIRST AMENDED VERIFIED COMPLAINT
## FOR JUDICIAL FORECLOSURE

### I. INTRODUCTION

Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 ("Citibank, as Trustee"), brings this First Amended Complaint as a matter of course to foreclose a mortgage that Defendant, Katherine L. Caito ("Defendant") granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for American Brokers Conduit and American Brokers Conduit's successors and assigns (the "Mortgage"). The Mortgage was executed June 6, 2006, recorded in the Land Evidence Records for the Town of Westerly on June 12, 2006 at Book 1541, Page 252 (the "Mortgage"), and encumbers the property located at 16 Yosemite Valley Road, Westerly,

302381117v2 1010069

Rhode Island (the "Property"). Defendant defaulted on her obligations under the terms of the Mortgage and the promissory note it secures and has failed to cure that default as of the filing of this First Amended Complaint. Pursuant to R.I. Gen. Laws § 34-27-1, Citibank, as Trustee, seeks entry of judgment from this Court to foreclose on the Mortgage by holding a public auction and sale of the Property.

## II. PARTIES

1.     Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3, is a corporation organized under the laws of the State of New York.

2.     On information and belief, Defendant, Katherine L. Caito, is an individual and resident of the State of Rhode Island.

3.     On information and belief, Interested Party, Internal Revenue Service, is a government agency with a last known usual place of business at 380 Westminster Street, Providence, Rhode Island.

## III. JURISDICTION AND VENUE

4.     This Court has original jurisdiction over this action in accordance with 28 U.S.C. § 1332 because the parties to this suit are diverse and because both the mortgage loan debt and the value of the property exceed $75,000.00, exclusive of interest and costs.

5.     Citibank, as Trustee's claims for judicial foreclosure and declaratory judgment are appropriate in this District pursuant to 28 U.S.C. § 1391(b) as the Property and the events at issue that result in foreclosure are located and/or occurred in this District.

6.     The subject Property is located at 16 Yosemite Valley Road, Westerly, Rhode Island.

## IV. FACTUAL ALLEGATIONS

7.      Citibank, as Trustee adopts and restates the allegations in Paragraphs 1 through 6 of its First Amended Complaint.

8.      On June 6, 2006, Defendant executed a promissory note (the "Note") through which she promised to repay, with interest, the principal sum of $4,500,000.00 to American Brokers Conduit. (Note, *Exhibit A.*)

9.      To secure her repayment obligations under the Note, Petitioner mortgaged, granted and conveyed the Property via the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for American Brokers Conduit and American Brokers Conduit's successors and assigns. (Mortgage, *Exhibit B.*) The Mortgage was recorded in the Land Evidence Records for the Town of Westerly on June 12, 2006 at Book 1541, Page 252

10.     On August 27, 2012, MERS, as nominee, assigned its interest in the Mortgage to Citibank, as Trustee, via an Assignment of Mortgage or Deed of Trust (the "Assignment"). (Assignment, *Exhibit C.*) The Assignment was recorded in the Land Evidence Records for the Town of Westerly on October 9, 2012 at Book 1932, Page 724. (Mortgage Assignment, *Exhibit C.*)

11.     The Mortgage provides that its covenants and agreements shall bind and benefit the successors and assigns of American Brokers Conduit. (Mortgage, *Exhibit B*, at ¶ 13.)

12.     In or about October 2012, Defendant defaulted on her repayment obligations under the Note and the Mortgage.

13.     On May 11, 2018, Citibank, as Trustee, through its mortgage loan servicer, Ocwen Loan Servicing, LLC ("Ocwen"), issued a notice of default to the Borrower on May 11,

2018 under the terms and in compliance with the Mortgage, including but not limited to, Paragraph 22. (Notice of Default, *Exhibit D.*)

14. As of the date of commencement of this action, Defendant has not reinstated the Mortgage as provided under the terms of the Mortgage, including Paragraph 19. (Mortgage, *Exhibit B.*)

15. The amount Defendant must pay in order to cure the default under the Note and Mortgage and to reinstate the loan as of May 11, 2018 is $ 2,201,915.26, exclusive of attorney fees and costs incurred in bringing the instant action.

16. As of the date of commencement of this action, Defendant has not cured the default in response to the May 11, 2018 notice.

17. Since the May 11, 2018 notice of default was mailed to Defendant, more than thirty days have passed, and specifically, the June 17, 2018 deadline for Defendant to cure her default has expired.

18. Defendant's total indebtedness under the terms of the Note and Mortgage through July 20, 2018 is $5,998,086.95 (Payoff Quote, *Exhibit E.*)

19. In addition, in accordance with Paragraphs 9, 14 and 22 of the Mortgage, Citibank, as Trustee is entitled to a full recovery of all attorney's fees, expenses and costs incurred in defending and protecting its interest in the Property, protecting its rights under the Mortgage, and collecting all expenses incurred in pursuing the remedies provided in Paragraph 22, including but not limited, the reasonable attorneys' fees and costs with respect to this judicial foreclosure action.

20. The Internal Revenue Service is, upon information and belief, a junior lienholder of a Federal Tax Lien issued against Defendant on April 29, 2014 and recorded in the Property's

302381117v2 1010069

chain of title on May 5, 2014 in the Land Evidence Records for the Town of Westerly at Book 2014, Page 7454.

## COUNT I – JUDICIAL FORECLOSURE

21.    Citibank, as Trustee incorporates by reference its responses to Paragraphs 1 through 20 of the First Amended Complaint.

22.    Defendant has failed to pay the required principal and interest payments on the debt evidenced by the Note and secured by the Mortgage.

23.    Defendant has failed to cure her default at any time following the notice of default issued in strict compliance with Paragraph 22 of the Mortgage.

24.    Defendant's default on the Note breached the uniform covenants of the Mortgage, which permits Citibank, as Trustee to thereafter accelerate the loan to maturity and demand full repayment.

25.    Under the terms of Paragraph 22 of the Mortgage, following acceleration, Citibank, as Trustee is contractually permitted to foreclose Defendant's right to redeem the Property.

WHEREFORE, Citibank, as Trustee requests the following relief:

25.    An order from the Court accelerating the mortgage loan debt in accordance with the terms of Paragraphs 19 and 22 of the Mortgage;

26.    An order from the Court authorizing Citibank, as Trustee to notice and conduct a foreclosure sale of the Property under Court oversight;

27.    An order and judgment of this Court foreclosing the Mortgage and Defendant Katherine L. Caito's right of redemption;

302381117v2 1010069

13

28. An award of attorney's fees, costs, and expenses in pursuit of foreclosure and in accordance with the terms of the Mortgage; and

29. Such other and further equitable relief as the Court deems may be required.

Respectfully submitted,

CITIBANK, N.A., AS TRUSTEE FOR
AMERICAN HOME MORTGAGE
ASSETS TRUST 2006-3, MORTGAGE
BACKED PASS-THROUGH
CERTIFICATES SERIES 2006-3,

By Its Attorneys,

/s/ Ethan Z. Tieger
Samuel C. Bodurtha, Bar No. 7075
Ethan Z. Tieger, Bar No. 9308
HINSHAW & CULBERTSON LLP
321 South Main Street, Suite 301
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
sbodurtha@hinshawlaw.com
etieger@hinshawlaw.com

Dated: September 4, 2018

302381117v2 1010069

1

## VERIFICATION

I, Crystal Kearse, the duly-authorized representative of the current holder of the subject mortgage, hereby certify that I have read the foregoing First Amended Verified Complaint for Judicial Foreclosure and know the contents thereof and the allegations contained in the First Amended Verified Complaint for Judicial Foreclosure are true and correct based on my knowledge and information.

_____
Name

Crystal Kearse
Senior Loan Analyst

_____
Title

STATE OF FLORIDA
COUNTY OF DUVAL

In Jacksonville, Florida, on the 31ST day of August 2018, before me personally appeared the above named Crystal Kearse, to me known and known by me to be the Senior Loan Analyst for Ocwen Financial Corporation, whose indirect subsidiary is Ocwen Loan Servicer, servicer for Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3; and she/he acknowledged said instrument, by her/him executed, to be her/his free act and deed in said capacity and the free act and deed of Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3.

[Notary Seal]

CHRISTINA RIDDER
Notary Public – State of Florida
Commission # GG 074395
My Comm. Expires Feb 24, 2021
Bonded through National Notary Assn.

_____
Notary Public

My commission expires: _____

7

302381117v2 1010069

# EXHIBIT A

## ADJUSTABLE RATE NOTE

### (12-MTA Index - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __125.000%__ OF THE ORIGINAL AMOUNT (OR $ __5,625,000.00__ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

June 6, 2006                    Cranston                              Rhode Island

                                                  (City)                                        (State)

16 Yosemite Valley Road, Westerly, RI  02891

(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ __4,500,000.00__ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __American Brokers Conduit__ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of __1.750__ % until __June 30, 2006__, and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate"). Commencing __July 1, 2006__, I will pay interest at a yearly rate of __7.782__ % (the "Subsequent Rate"). Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on __the 1st__ of each month beginning on __August 1, 2006__. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __July 1, 2036__, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at __PO Box 660029, Dallas, TX  75266-0029__ , or at a different place if required by the Note Holder.

Doc # 944746/Image: 944746.prn

App#

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ 16,075.96 , unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st___ day of ___August, 2006___, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ ___Three and One Half___ percentage points ___3.500___ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than ___Nine and 950 Thousandths___ _____ percentage points ___9.950___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing ___September 1, 2006___, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of

Doc # 944747/Image: 944747.prn          Page 2 of 6     Appx_____     AHM-2030N(MULT) (0106)

18

my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___125.000%___ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___125.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Zero___ anniversary of the due date of the first monthly payment, and on that same day every ___Zero___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

### Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates

the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Katherine L Caito          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
BY AMERICAN BROKERS CONDUIT

DANIELLE STERLING
ASST. SECRETARY

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Doc # 944751/Image: 944751.prn          Page 6 of 6          App#          AHM-2030N(MULT) (0106)

24

## Prepayment Fee Note Addendum

This Note Addendum is made this ___9th___ day of ___June, 2006___ and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of ___American Brokers Conduit___
_____ (the "Lender") and dated as of even date herewith (the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

### BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the ___FIRST___ anniversary of the date of the Note, the Prepayment Fee shall be equal to ___Two___ percent ( __2.000__ %) of the unpaid principal balance. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

MULTISTATE PREPAY NOTE RIDER                                        AHM-2018P(Multi) (0605)
KY,LA,MI, MS,MO,NC, RI,VA
MTA 12/04

Page 1 of 2

Doc # 943777/ Image: 943777.prn  Ap

**NOTICE TO THE BORROWER**
**Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Katherine L Carto                -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
                -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
                -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
                -Borrower          -Borrower

MULTISTATE PREPAY NOTE RIDER                    AHM-2018P(Multi) (08/05)
KY,LA,MI, MS,MO,NC, RI,VA
MTA 12/04

Page 2 of 2

Doc # 943778/ Image: 943778.prn  Appt

# EXHIBIT B

Return To:
American Brokers Conduit
520 Broadhollow Road
Melville, NY 11747

RECEIVED FOR RECORD
WESTERLY R.I.

Jun 12,2006 at 11:35:54A

BOOK 1541 PAGE 252
DOC #: 00003845

Prepared By:
Sherry Johnson
300 Bedford Street
Entrance D
Manchester, NH
03101

AHØ65C
1313784

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

MIN ████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 6, 2006 together with all Riders to this document.
(B) "Borrower" is  Katherine L Caito

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

DOC #:322411         APPL #████████████

**RHODE ISLAND** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

(VMP) **-6A(RI)** (0005)        Form 3040 1/01
Page 1 of 15        VM31 9905.02        Initials: _KLC_
VMP MORTGAGE FORMS - (800)521-7291

(D) "**Lender**" is  American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York
Lender's address is  538 Broadhollow Road, Melville, NY  11747

(E) "**Note**" means the promissory note signed by Borrower and dated  June 6, 2006
The Note states that Borrower owes Lender  Four Million Five Hundred Thousand and
No/100                                                                                          Dollars
(U.S. $ 4,500,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    July 1, 2036
(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Prepayment Rider |

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "**Escrow Items**" means those items that are described in Section 3.
(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used

DOC #:322412          APPL #▬▬▬▬▬          Initials: _KLC_

(VMP) -6A(RI) (0005)          Page 2 of 15          Form 3040  1/01

29

2

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the County of Washington :

[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION

Parcel ID Number:  Map 173 Lot 11                          which currently has the address of
16 Yosemite Valley Road                                                                      [Street]
Westerly                                       [City] , Rhode Island      02891      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DOC #:322413                          APPL #: ████████████        Initials: _____

████ -6A(RI) (0005)                                  Page 3 of 15                    Form 3040  1/01

30

2

BOOK 1541 PAGE 255

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

31

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

DOC #:322415                    APPL #                    Initials: _____                    Form 3040  1/01

VMP -6A(RI) (0005)                    Page 5 of 15

BOOK 1541 PAGE 257

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

DOC #:322416

APPL #

Initials:

-6A(RI) (0005)

Page 6 of 15

Form 3040  1/01

33

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its

DOC #:322417 APPL ████████████ Initials: _____

VMP®-6A(RI) (0005) Page 7 of 15 Form 3040 1/01

34

any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but

DOC #:322420                    APPL #▉▉▉▉▉                    Initials: _KLL_

-6A(RI) (0005)                    Page 10 of 15                    Form 3040  1/01

such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

DOC #:322421          APPL #:▓▓▓▓▓▓▓          Initials: 

-6A(RI) (0005)          Page 11 of 15          Form 3040  1/01

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time
A period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC #:322422

-6A(RI) (0005)

APPL #

Initials: _KLe_

Page 12 of 15

Form 3040 1/01

37

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25. Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

DOC #:322423                          APPL ████████          Initials: _____          **Form 3040  1/01**

████ -6A(RI) (0005)                   Page 13 of 15

BOOK 1541 PAGE 265

26. **Loan Fees.** Borrower has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loans secured by this Security Instrument:

| | |
|---|---|
| Origination - Discount Fees (points) | $ |
| Application Fees | $ 995.00 |
| Closing Preparation Fees | $ 900.00 |
| | $ |
| | $ |

As provided in Rhode Island General Laws Section 34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____   _____ (Seal)
                                   Katherine L Caito          -Borrower

                                   _____ (Seal)
                                                              -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                  -Borrower

* Signs as "Borrower" solely for the purpose of waiving homestead rights.

DOC #:322424          APPL #

-6A(RI) (0005)          Page 14 of 15          Form 3040  1/01

**STATE OF RHODE ISLAND,**

BOOK 1541 PAGE 266

Kent    **County ss:**

On this   6th    day of    June, 2006           , in   Cranston
in said County, before me personally appeared   Katherine L Caito

each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be ~~his~~/her/~~their~~ free act and deed.

Notary Public    John S. DiBona

My Commission Expires:   06/21/09

DOC #:322425

APPL ▮▮▮▮▮▮

Initials: _KLC_

-6A(RI) (0005)                    Page 15 of 15                    Form 3040  1/01

BOOK 1541 PAGE 267

## EXHIBIT "A"

### PARCEL I

That certain tract or parcel of land, together with a dwelling thereon, located on the westerly side of Yosemite Valley Road in the Town of Westerly, County of Washington, and State of Rhode Island, bounded and described as follows, to wit:

Lot No. 2 as shown and delineated on plat entitled "Land of The Marist Fathers of Boston, Inc., Watch Hill, Westerly, Rhode Island, to conveyed to George W. Page, Jr., Scale: 1" = 80'. Date: November 8, 1982. Guerriere & Halnon, Inc., Engineering and Land Surveying, 205 East Central Street, Franklin, Mass., Nov. 12, 1982: Lot Lines between Lots 5 and 6 Revised - Note Added: 12-2-1982 and 12-31-82" which said plat is on file in the office of the Town Clerk of said Westerly and copy in Envelope 257 and by reference is made a part hereof.

### PARCEL II

That certain tract or parcel of land locate in the Town of Westerly, County of Washington and State of Rhode Island, and bounded and described as follows:

Beginning at an iron pin at the northeasterly corner of the parcel herein conveyed, said iron pin also being the northeasterly corner of lot number 1 as shown on that plan entitled "Land of The Marist Fathers of Boston, Inc." Watch Hill, Westerly, RI, to be conveyed to George W. Page, Jr., Scale 1" = 80', date November 8, 1982", which is recorded in the Records of Land Evidence of the Town of Westerly Envelope #257; thence in a southerly direction on a bearing of S 13° -41' -24" E bounded easterly by land now or formerly of Katherine L. Caito a distance of 150.00 feet, to a point, said Caito land being Lot #2 on said Marist Fathers plan; thence in a westerly direction at a bearing of S 76° -18' -36" W a distance of 45.00 feet, to a point; thence in a southerly direction at a bearing of S 19° -38' =53" W a distance of 29.00 feet, to a point; thence in a westerly direction at a bearing of N 78° -40' -45" W a distance of 10.00 feet, to a point; thence in a northerly direction in a line parallel to the first course at a bearing of N 13° -41' -24" W a distance of 245.79 feet to a point at land now or formerly of James Curley being Lot #3 of said Marist Father Subdivision. The last four courses being bounded westerly and southerly by land now or formerly of Joseph F. Parise, Jr. and Lois D. Parise. Thence in a southeasterly direction at a bearing of S 56° -24' -58" E bounded northerly by said Curley land a distance of 103.17 feet to the point and place of beginning.

The above described parcel is delineated as "Land to be conveyed to Katherine L. Caito" on that plan entitled "Plan Showing Portion of Property of Joseph F. Parise Jr. & Lois D. Parise, Also Being a Portion of Lot #1 of Marist Father Subdivision, Cherenzia & Associates, Ltd., Scale: 1' = 40", June 6, 1989."

Subject to restrictions and easement of record.

41



BOOK 1541 PAGE 268

### Prepayment Rider

This Prepayment Rider is made this <u>6th</u> day of <u>June, 2006</u> and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to <u>American Brokers Conduit</u>
_____ (the "Lender" or "Noteholder").

of the same date and covering the Property described in the Security Instrument and located at;

16 Yosemite Valley Road   Westerly, RI 02891
[Property Address]

**PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the <u>FIRST</u> anniversary of the date after the execution of the Security Instrument, the Prepayment Fee shall be equal to <u>Two</u> percent ( <u>2.000</u> %) of the unpaid principal balance. Thereafter, prepayment shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of

MULTISTATE PREPAY SECURITY RIDER       Page 1 of 2                          AHM-2018SC(Mult) (0805)
KY,LA,MI, MS,MO,NC, RI,VA           Doc # 943779/ Image: 943779 prn  Appl▮▮▮▮▮▮▮▮▮
MTA 12/04

42

the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

BOOK 1541 PAGE 269

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
Katherine L Caito      -Borrower                         -Borrower

_____ (Seal)       _____ (Seal)
                 -Borrower                       -Borrower

_____ (Seal)       _____ (Seal)
                 -Borrower                       -Borrower

_____ (Seal)       _____ (Seal)
                 -Borrower                       -Borrower

MULTISTATE PREPAY SECURITY RIDER      Page 2 of 2                    AHM-2018S(Mult) (0805)
KY,LA,MI, MS,MO,NC, RI,VA          Doc # 943780/Image: 943780 prn    Appl
MTA 12/04

43

# ADJUSTABLE RATE RIDER

## (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this ___6th___ day of __June, 2006__ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to _____ __American Brokers Conduit__

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

__16 Yosemite Valley Road, Westerly, RI    02891__

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __125.000%__ OF THE ORIGINAL AMOUNT (OR $ __5,625,000.00__ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of __1.750__ % until __June 30, 2006__ , and the initial monthly payment provided for in the Note will be based on this rate. Commencing __July 1, 2006__ , I will pay interest at a yearly rate of __7.782__ %. Thereafter, the interest rate I will pay may change in accordance with Section 4 of the Note.

AHM2029R(MULT) (0106)

Doc # 944735/Image: 944735.prn  App# ▮▮▮▮▮

BOOK 1541 PAGE 271

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the ___1st___ day of ___August, 2006___, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___Three and One Half___ percentage points ___3.500___ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than ___9.950___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing ___September 1st, 2006___, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly

AHM2029R(MULT) (0106)

Doc # 944736/Image: 944736.prn   App#

BOOK 1541 PAGE 272

payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the maturity date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___125.000%___ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___125.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Zero___ anniversary of the due date of the first monthly payment, and on that same day every ___Zero___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note

AHM2029R(MULT) (0106)

46

Doc # 944737/Image: 944737.prn　App#

4

Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

BOOK 1541 PAGE 273

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

AHM2029R(MULT) (0106)

Doc # 944738/Image: 944738.prn   App# 

BOOK 1541 PAGE 274

_____ (Seal)            _____ (Seal)
Katherine L Catto        -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                   -Borrower


Page 5 of 5                                  AHM2029R(MULT) (0106)

Doc # 944739/Image: 944739.prn   App#

# EXHIBIT C

# RHODE ISLAND

PREPARED BY SECURITY CONNECTIONS
WHEN RECORDED MAIL TO:
*SECURITY CONNECTIONS INC.*
*240 TECHNOLOGY DRIVE*
*IDAHO FALLS, ID 83401*
*PH:(208)528-9895*
*ATT: TERRILL NIELSON*

RECEIVED FOR RECORD
WESTERLY R.I.

Oct 09,2012 at 09:49A

BOOK  1932 PAGE   724
DOC #: 00005252

TOWN OF *WESTERLY*
Loan.No ▇▇▇▇▇▇▇ [P26]

Pool.No                           Space above for recorder's use
▇▇▇▇▇▇▇▇

## ASSIGNMENT OF MORTGAGE OR DEED OF TRUST

FOR VALUE RECEIVED, *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE*
*FOR AMERICAN BROKERS CONDUIT ITS SUCCESSORS AND ASSIGNS,*

located at *P.O. BOX 2026, FLINT, MI 48501-2026*
does hereby grant, assign, transfer and set over unto *Citibank, N.A., as*
*Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage-Backed*
*Pass-Through Certificates Series 2006-3*

located at  *1525 S. Beltline Rd.  Coppell, TX 75019*
                                                       its successors
and assigns a certain Mortgage or Deed of Trust dated   *JUNE 6, 2006*
executed by *KATHERINE L CAITO*
                                                     as Grantor(s),
and recorded in Volume *1541*       Page No. *252*       Instrument No. *0000385*
of the Mortgage or Deed of Trust records in the office of the Town Clerk in the
Town of *WESTERLY*       State of Rhode Island on the  *12th* day of  *JUNE 2006*
Time of recording *11:35:54A*
Property Address: *16 YOSEMITE VALLEY RD WESTERLY, RI 02891*

▇▇▇▇▇▇▇▇▇▇▇
Loan No.

(NMRI.RI)                              Page 1 of 2
C=S.260.0013            MIN ▇▇▇▇▇▇▇▇▇  MERS PHONE: 1-888-679-6377
P=S.002.00070.82            J=am80401122l.s.09023

Loan.No ███████ [P26]                    BOOK 1932 PAGE 725

TOGETHER with all rights accrued or to accrue to said MORTGAGE OR DEED OF TRUST.

DATED AUGUST 27, 2012            .

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.


Witness, KYLEE JENSEN

SARAH HIX
ASSISTANT SECRETARY


Witness, CRISTINA HUITRON


STATE OF IDAHO        )
                      ) ss
COUNTY OF BONNEVILLE  )


On AUGUST 27, 2012           , before me, the undersigned, a Notary Public in and
for said County and State, personally appeared SARAH HIX
known to me to be the person who executed the within instrument as the
ASSISTANT SECRETARY            , and
known to me to be the person who executed the within instrument as the
                          of the Corporation that executed the
within instrument and acknowledged to me that the Corporation executed the within
instrument pursuant to its by-laws or a resolution of its board of directors.
WITNESS my hand and official seal.

```
EMMETT GREEN
NOTARY PUBLIC
STATE OF IDAHO
```

EMMETT GREEN   (COMMISSION EXP. 05-31-18)
NOTARY PUBLIC

(NMRI.RI.2)
C=s.260.0013    MIN ███████ MERS PHONE: 1-888-679-6377
P=8.002.00070.82    Jeams040112a1.s.09023

Page 2 of 2

TOWN CLERK
Security Connections

51

# EXHIBIT D

Ocwen Loan Servicing, LLC
www.ocwen.com
Helping Homeowners Is What We Do!®

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

05/11/2018

VIA First Class Mail

Loan Number

Katherine L Caito
16 Yosemite Valley Rd
Westerly, RI 02891-5622

Property Address: 16 Yosemite Valley Rd
Westerly, RI 02891-5622

## NOTICE OF DEFAULT

### AVISO IMPORTANTE PARA PERSONAS QUE HABLAN ESPAÑOL:

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received an Order of Discharge in a Chapter 7 case filed under the Bankruptcy Code of the United States, this notice is not intended as an attempt to collect any debt from you personally. If you have received an Order of Discharge in a Chapter 11, 12 or 13 bankruptcy case, this notice is not an attempt to collect a pre-petition debt pursuant to a completed and confirmed Bankruptcy Plan. If the foregoing applies to you, this notice is sent to you only as a preliminary step to an "In Rem" foreclosure on the Mortgage against the above-referenced "Property." Provisions may be contained within the Mortgage/Deed of Trust that requires notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt contrary to any entered Bankruptcy Order of Discharge.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because we have not been notified of your bankruptcy case. If the foregoing applies to you, it is **IMPORTANT** that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

---

NMLS # 1852

DEMAND05BKDC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1 of 4

**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners Is What We Do!*®

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

Mortgage payments on the above referenced account are past due, which has caused a default under the terms of the Mortgage or Deed of Trust (hereinafter, "Security Instrument"). As of **05/11/2018**, the following amounts are past due:

| | |
|---|---|
| Principal and Interest | $1,755,311.72 |
| Interest Arrearage | $0.00 |
| Escrow | $419,235.00 |
| Late Charges | $21,282.05 |
| Insufficient Funds Charges | $0.00 |
| Fees / Expenses | $6,086.49 |
| Suspense Balance (CREDIT) | $0.00 |
| Interest Reserve Balance (CREDIT) | $0.00 |
| **TOTAL DUE** | **$2,201,915.26** |

In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before **06/17/2018**, at the address listed on page four of this notice. Payment must be received via MoneyGram, bank check, money order or certified funds. Please be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement, in addition to the overdue amount on the mortgage account. Any payment to reinstate the Mortgage after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the Mortgage will be returned, and will not stop any foreclosure proceedings already begun on the Property.
**PRIOR TO SUBMITTING A PAYMENT, PLEASE CALL US TO VERIFY THE EXACT AMOUNT PAST DUE ON THE ACCOUNT.**

Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. A customer has the right to reinstate the account after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

If the default is not cured on or before the date specified above, Ocwen Loan Servicing LLC ("Ocwen"), at its option, may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Ocwen shall be entitled to collect all expenses incurred in pursuing the remedies provided under applicable law, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Ocwen invokes the STATUTORY POWER OF SALE, Ocwen shall mail a copy of a notice of sale to the customer and to other persons in a manner prescribed by applicable law.

DEMAND05BKDC

NMLS # 1852
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 2 of 4

Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

---

We will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release information once written authorization has been obtained, as required by law.

In addition, a U.S. Department of Housing and Urban Development ("HUD") counseling agency may be able to provide assistance. To locate the HUD-approved counseling agency, call the HUD Housing Counseling Service at 800.569.4287 or consult HUD's website at www.HUD.gov.

**Attention Servicemembers and Dependents:** Servicemembers on "active duty" or "active service," or a spouse or dependent of such a service member, may be entitled to certain legal protections under the federal Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-597b) ("SCRA") regarding the service member's interest rate and foreclosure protections. SCRA and certain state laws provide important protections for you. If you are currently in the military service, or have been within the last twelve (12) months, please notify OCWEN immediately. Servicemembers and dependents with questions about SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php. Military OneSource is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under SCRA, please go to www.militaryonesource.mil/legal or call 800.342.9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website. Homeowner counseling is also available at HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also contact us toll-free at 800.746.2936.

If the mortgage account cannot be brought current, we should be contacted immediately to discuss possible alternatives to foreclosure. We want to help remedy the delinquent status of this account and would like to discuss alternatives that might be available. While our primary objective is the collection of past due amounts on the account, we want to work to find the best available alternative to bring the account current.

Please visit our website at www.ocwencustomers.com where the account can be reviewed and financial information entered.

For any questions or concerns, we can be reached toll-free at 800.746.2936. We are available Monday through Friday 8 am to 9 pm and Saturday 8 am to 5 pm ET.

Daniel Robbins has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,
Loan Servicing
Toll Free Phone: 800.746.2936

**ADDRESS WRITTEN CORRESPONDENCE TO :**
Ocwen Loan Servicing, LLC
Attention: Research Department
P.O. Box 24736
West Palm Beach, FL 33416-4736

---

NMLS # 1852                                                                 DEMAND05BKDC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 3 of 4

Ocwen Loan Servicing, LLC

www.ocwen.com

*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

## PAYMENT REMITTANCE INFORMATION
### (Always include the account number ▉▉▉▉▉ with any payment)

### Certified Payment Methods

| Western Union | MoneyGram |
|---|---|
| **Code City:** OCWEN | **Receiver Code:** 2355 |
| **State:** Florida | **Payable to:** Ocwen Loan Servicing, LLC |
| **Reference:** Account Number ▉▉▉ | **City, State:** Orlando, Florida |
| **Agent Locator:** 800.225.5227 | **Reference:** Account Number ▉▉ |
| | **Agent Locator:** 800.926.9400 |

| Mail a Money Order/Certified Check | Bank Wire |
|---|---|
| **For Regular Mail:** | **Bank:** Wells Fargo Bank, NA |
| Ocwen Loan Servicing, LLC | **Ocwen Bank ABA Routing Number:** 121000248 |
| P.O. Box 660264 | **Ocwen Bank Account Number:** ▉▉ |
| Dallas, TX 75266-0264 | **Account Name:** Ocwen Loan Servicing, LLC |
| **For Overnight/Certified Mail:** | **Reference:** Account Number ▉▉ |
| Ocwen Loan Servicing, LLC | Property Address and Customer Name |
| Box # 660264 | **Email Wire Details to:** |
| 1010 W. Mockingbird Lane, Suite 100 | Transferfunds@ocwen.com |
| Dallas, TX 75247 | |

NMLS # 1852

DEMAND05BKDC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

# EXHIBIT E

**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

06/21/2018

Account Number: ▮▮▮▮▮▮▮

Renee Barker

**Property Address:**
16 Yosemite Valley Rd, Westerly, RI 02891-5622
**Requestor Email Address:** Tara.LoVerso@ocwen.com

**Borrower(s) Name:** Katherine L Caito

# PAYOFF QUOTE
## VALID THROUGH 07/20/2018

Dear Requester,



## Why We Are Sending This Letter

A payoff quote was requested for account number: ▮▮▮▮▮▮▮
The total amount due is **$5,998,086.95**, which will be valid through 07/20/2018



## What Needs To Be Done

1. **Scheduled payments should still be made on time**, until the account is paid off, to avoid late charges and payments being reported as late to the credit bureaus.
2. Refer to the following pages for a detailed breakdown of this quote and for payment instructions.
3. **Payoff funds should be sent in one of the forms of certified funds listed here:** Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check, Money Order, Attorney's Escrow Check, MoneyGram or Western Union. **Funds not remitted in one of these forms will be returned**, and the payoff will not be processed.

## What We Will Do

Upon receipt of payoff funds, we will verify all amounts due and contact the issuer of the funds in the event of any discrepancies.

After the payoff funds have been applied and the account has been reconciled, any overpayment of funds will be returned to the remitter through regular mail within 20 days of the receipt of the funds.

For **any questions regarding this payoff quote,** the Customer Care Center may be contacted at 800.746.2936, Monday through Friday 8 am to 9 pm and Saturday 8 am to 5 pm ET.

Sincerely,
*Loan Servicing*

---

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

BOOK 1541 PAGE 259

secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

DOC #:322418

APPL #

Initials: _____

VMP -6A(RI) (0006)

Page 8 of 15

Form 3040 1/01

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or

DOC #:322419

APPL

Initials: _KPC_

Page 9 of 15

Form 3040 1/01

VMP -6A(RI) (0005)



**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

See below for a breakdown of the total amount required to pay off the **above-referenced account** on or before 07/20/2018, as well as complete payoff instructions.

**Important Note:** If there is an escrow account associated with the mortgage for property taxes and insurance, we may need to pay the tax and insurance bills before this payoff quote expires on 07/20/2018. Any additional disbursements made on behalf of the mortgage will be added to the amounts due on payoff.

| Description | Amount Due |
|---|---|
| Principal | $4,622,474.40 |
| Interest | $1,137,733.19 |
| Escrow Advance | $210,438.82 |
| Property Inspection | $14.50 |
| Property Inspection Fee | $580.00 |
| Title Report Fee | $282.00 |
| Property Valuation | $328.00 |
| FC Thru Title Searches | $520.00 |
| FC Thru Complaint | $125.00 |
| FC Thru Judgment | $556.25 |
| Additional/Hourly/Court Appearance | $50.00 |
| Demand Letter | $9.53 |
| Skip Trace/Search | $16.06 |
| Service of Process | $89.48 |
| Legal Filing Service | $640.00 |
| Sale Publication | $1,918.64 |
| Selling Officer/Sheriff Cancel Fee | $965.00 |
| Certified Mail Cost | $6.53 |
| Satisfaction Cost | $57.50 |
| Late Charges | $21,282.05 |

| Total Amount Due | $5,998,086.95 |
|---|---|

| | |
|---|---|
| Next Due Date | 05/01/2012 |
| Quoted Date | 06/21/2018 |
| Payoff Quote Expiration Date | 07/20/2018 |
| Grace Period End Date | 06/16/2018 |
| Original Principal Balance | $4,500,000.00 |

Given below is a breakdown of the interest that is shown above in the amount of $1,137,733.19 due on or before 07/20/2018. Please note that interest is generally charged in arrears. On a normal amortizing loan, the current month's payment will include the interest charges for the previous month. The unpaid principal balance is not the payoff amount.

---

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



## OCWEN Loan Servicing, LLC

www.ocwen.com

*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|------|-----|-----------------|---------------|----------------|----------------|--------|
| 04/01/12 | 04/30/12 | $14,090.84 | 3.65800% | $4,622,474.40 | $469.69476000 | 30 |
| 05/01/12 | 05/31/12 | $14,067.73 | 3.65200% | $4,622,474.40 | $468.92434700 | 30 |
| 06/01/12 | 06/30/12 | $14,048.47 | 3.64700% | $4,622,474.40 | $468.28233700 | 30 |
| 07/01/12 | 07/31/12 | $14,048.47 | 3.64700% | $4,622,474.40 | $468.28233700 | 30 |
| 08/01/12 | 08/31/12 | $14,048.47 | 3.64700% | $4,622,474.40 | $468.28233700 | 30 |
| 09/01/12 | 09/30/12 | $14,048.47 | 3.64700% | $4,622,474.40 | $469.05275000 | 30 |
| 10/01/12 | 10/31/12 | $14,071.58 | 3.65300% | $4,622,474.40 | $469.95156400 | 30 |
| 11/01/12 | 11/30/12 | $14,098.55 | 3.66000% | $4,622,474.40 | $470.72197600 | 30 |
| 12/01/12 | 12/31/12 | $14,121.66 | 3.66600% | $4,622,474.40 | $471.49238900 | 30 |
| 01/01/13 | 01/31/13 | $14,144.77 | 3.67200% | $4,622,474.40 | $471.87759500 | 30 |
| 02/01/13 | 02/28/13 | $14,156.33 | 3.67500% | $4,622,474.40 | $472.13439900 | 30 |
| 03/01/13 | 03/31/13 | $14,164.03 | 3.67700% | $4,622,474.40 | $472.13439900 | 30 |
| 04/01/13 | 04/30/13 | $14,164.03 | 3.67700% | $4,622,474.40 | $471.74919300 | 30 |
| 05/01/13 | 05/31/13 | $14,152.48 | 3.67400% | $4,622,474.40 | $471.10718300 | 30 |
| 06/01/13 | 06/30/13 | $14,133.22 | 3.66900% | $4,622,474.40 | $470.33677000 | 30 |
| 07/01/13 | 07/31/13 | $14,110.10 | 3.66300% | $4,622,474.40 | $469.82316200 | 30 |
| 08/01/13 | 08/31/13 | $14,094.69 | 3.65900% | $4,622,474.40 | $469.05275000 | 30 |
| 09/01/13 | 09/30/13 | $14,071.58 | 3.65300% | $4,622,474.40 | $468.53914100 | 30 |
| 10/01/13 | 10/31/13 | $14,056.17 | 3.64900% | $4,622,474.40 | $467.89713100 | 30 |
| 11/01/13 | 11/30/13 | $14,036.91 | 3.64400% | $4,622,474.40 | $467.25512100 | 30 |
| 12/01/13 | 12/31/13 | $14,017.65 | 3.63900% | $4,622,474.40 | $466.61311000 | 30 |
| 01/01/14 | 01/31/14 | $13,998.39 | 3.63400% | $4,622,474.40 | $466.35630600 | 30 |
| 02/01/14 | 02/28/14 | $13,990.69 | 3.63200% | $4,622,474.40 | $465.97110000 | 30 |
| 03/01/14 | 03/31/14 | $13,979.13 | 3.62900% | $4,622,474.40 | $465.58589400 | 30 |
| 04/01/14 | 04/30/14 | $13,967.58 | 3.62600% | $4,622,474.40 | $465.32909000 | 30 |
| 05/01/14 | 05/31/14 | $13,959.87 | 3.62400% | $4,622,474.40 | $465.20068800 | 30 |
| 06/01/14 | 06/30/14 | $13,956.02 | 3.62300% | $4,622,474.40 | $465.07228500 | 30 |
| 07/01/14 | 07/31/14 | $13,952.17 | 3.62200% | $4,622,474.40 | $464.55867700 | 30 |
| 08/01/14 | 08/31/14 | $13,936.76 | 3.61800% | $4,622,474.40 | $464.43027500 | 30 |
| 09/01/14 | 09/30/14 | $13,932.91 | 3.61700% | $4,622,474.40 | $464.30187300 | 30 |
| 10/01/14 | 10/31/14 | $13,929.06 | 3.61600% | $4,622,474.40 | $464.17347100 | 30 |
| 11/01/14 | 11/30/14 | $13,925.20 | 3.61500% | $4,622,474.40 | $463.91666700 | 30 |
| 12/01/14 | 12/31/14 | $13,917.50 | 3.61300% | $4,622,474.40 | $464.04506900 | 30 |
| 01/01/15 | 01/31/15 | $13,921.35 | 3.61400% | $4,622,474.40 | $464.94388300 | 30 |
| 02/01/15 | 02/28/15 | $13,948.32 | 3.62100% | $4,622,474.40 | $465.71429600 | 30 |
| 03/01/15 | 03/31/15 | $13,971.43 | 3.62700% | $4,622,474.40 | $466.86991400 | 30 |
| 04/01/15 | 04/30/15 | $14,006.10 | 3.63600% | $4,622,474.40 | $468.15393500 | 30 |
| 05/01/15 | 05/31/15 | $14,044.62 | 3.64600% | $4,622,474.40 | | 30 |

PAYOFFE

NMLS # 1852

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

# OCWEN Loan Servicing, LLC

www.ocwen.com

*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

O C W E N

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|------|-----|-----------------|---------------|----------------|----------------|--------|
| 06/01/15 | 06/30/15 | $14,083.14 | 3.65600% | $4,622,474.40 | $469.43795600 | 30 |
| 07/01/15 | 07/31/15 | $14,125.51 | 3.66700% | $4,622,474.40 | $470.85037800 | 30 |
| 08/01/15 | 08/31/15 | $14,183.29 | 3.68200% | $4,622,474.40 | $472.77640900 | 30 |
| 09/01/15 | 09/30/15 | $14,244.93 | 3.69800% | $4,622,474.40 | $474.83084300 | 30 |
| 10/01/15 | 10/31/15 | $14,333.52 | 3.72100% | $4,622,474.40 | $477.78409000 | 30 |
| 11/01/15 | 11/30/15 | $14,414.42 | 3.74200% | $4,622,474.40 | $480.48053300 | 30 |
| 12/01/15 | 12/31/15 | $14,468.34 | 3.75600% | $4,622,474.40 | $482.27816200 | 30 |
| 01/01/16 | 01/31/16 | $14,580.05 | 3.78500% | $4,622,474.40 | $486.00182200 | 30 |
| 02/01/16 | 02/29/16 | $14,722.58 | 3.82200% | $4,622,474.40 | $490.75269900 | 30 |
| 03/01/16 | 03/31/16 | $14,830.44 | 3.85000% | $4,622,474.40 | $494.34795700 | 30 |
| 04/01/16 | 04/30/16 | $14,930.59 | 3.87600% | $4,622,474.40 | $497.68641000 | 30 |
| 05/01/16 | 05/31/16 | $15,061.56 | 3.91000% | $4,622,474.40 | $502.05208100 | 30 |
| 06/01/16 | 06/30/16 | $15,165.57 | 3.93700% | $4,622,474.40 | $505.51893600 | 30 |
| 07/01/16 | 07/31/16 | $15,281.13 | 3.96700% | $4,622,474.40 | $509.37099800 | 30 |
| 08/01/16 | 08/31/16 | $15,365.88 | 3.98900% | $4,622,474.40 | $512.19584400 | 30 |
| 09/01/16 | 09/30/16 | $15,435.21 | 4.00700% | $4,622,474.40 | $514.50708100 | 30 |
| 10/01/16 | 10/31/16 | $15,492.99 | 4.02200% | $4,622,474.40 | $516.43311200 | 30 |
| 11/01/16 | 11/30/16 | $15,566.18 | 4.04100% | $4,622,474.40 | $518.87275100 | 30 |
| 12/01/16 | 12/31/16 | $15,693.30 | 4.07400% | $4,622,474.40 | $523.11002000 | 30 |
| 01/01/17 | 01/31/17 | $15,778.05 | 4.09600% | $4,622,474.40 | $525.93486500 | 30 |
| 02/01/17 | 02/28/17 | $15,847.38 | 4.11400% | $4,622,474.40 | $528.24610200 | 30 |
| 03/01/17 | 03/31/17 | $15,939.83 | 4.13800% | $4,622,474.40 | $531.32775200 | 30 |
| 04/01/17 | 04/30/17 | $16,032.28 | 4.16200% | $4,622,474.40 | $534.40940100 | 30 |
| 05/01/17 | 05/31/17 | $16,147.84 | 4.19200% | $4,622,474.40 | $538.26146300 | 30 |
| 06/01/17 | 06/30/17 | $16,301.93 | 4.23200% | $4,622,474.40 | $543.39754600 | 30 |
| 07/01/17 | 07/31/17 | $16,471.42 | 4.27600% | $4,622,474.40 | $549.04723700 | 30 |
| 08/01/17 | 08/31/17 | $16,679.43 | 4.33000% | $4,622,474.40 | $555.98094900 | 30 |
| 09/01/17 | 09/30/17 | $16,906.70 | 4.38900% | $4,622,474.40 | $563.55667100 | 30 |
| 10/01/17 | 10/31/17 | $17,118.56 | 4.44400% | $4,622,474.40 | $570.61878400 | 30 |
| 11/01/17 | 11/30/17 | $17,341.98 | 4.50200% | $4,622,474.40 | $578.06610400 | 30 |
| 12/01/17 | 12/31/17 | $17,576.96 | 4.56300% | $4,622,474.40 | $585.89863000 | 30 |
| 01/01/18 | 01/31/18 | $17,842.75 | 4.63200% | $4,622,474.40 | $594.75837300 | 30 |
| 02/01/18 | 02/28/18 | $18,108.54 | 4.70100% | $4,622,474.40 | $603.61811500 | 30 |
| 03/01/18 | 03/31/18 | $18,420.56 | 4.78200% | $4,622,474.40 | $614.01868300 | 30 |
| 04/01/18 | 04/30/18 | $18,786.51 | 4.87700% | $4,622,474.40 | $626.21687900 | 30 |
| 05/01/18 | 05/31/18 | $19,121.64 | 4.96400% | $4,622,474.40 | $637.38785900 | 30 |
| 06/01/18 | 06/30/18 | $19,479.88 | 5.05700% | $4,622,474.40 | $649.32925100 | 30 |
| 07/01/18 | 07/19/18 | $12,569.02 | 5.15200% | $4,622,474.40 | $661.52744700 | 19 |

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

63



**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

PAYOFFE

NMLS # 1852

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

# Ocwen Loan Servicing, LLC
www.ocwen.com

*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

OCWEN

## PAYOFF REQUIREMENTS AND CONDITIONS

**Certified funds are required for payoff.** Payoff funds must be provided via certified funds such as: Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check, Money Order, Attorney's Escrow Check, MoneyGram or Western Union. Non-certified payments will not be accepted, and the payoff will not be processed.

## HOW TO SUBMIT PAYOFF FUNDS

- Wire transfers are preferred. Wire transfer is the fastest, safest and most convenient payment option. Because this is the fastest option, it may also save money on per-diem interest.

- To make a wire transfer, provide the information listed under payment methods to the remitting bank.

- Be sure to always include the borrower's name, property address and account number on any remittance. If there is an inability to wire transfer funds, the payment should be sent in certified funds by overnight mail as shown below.

## PAYMENT METHODS:

| | |
|---|---|
| **Bank:** | Wells Fargo Bank, NA |
| **OCWEN Bank ABA Routing Number:** | 121000248 |
| **OCWEN Bank Account Number:** | ▮▮▮▮▮▮ |
| **Account Name:** | OCWEN Loan Servicing, LLC |
| **Reference:** | OCWEN Customer Account Loan #▮▮▮▮▮▮ Property Address, and Borrower's Name |
| **Email:** | Wire details to: Transferfunds@ocwen.com |

Mail Certified Funds Check to:
OCWEN Loan Servicing, LLC
Attn: Cashiering / Payoff Department
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Reference: OCWEN Account Number ▮▮▮▮▮

*All checks/money orders should be made payable to: OCWEN Loan Servicing, LLC. **The mortgage account number, borrower's name and property address should be included on the front of any check or money order.**

| | |
|---|---|
| **Code City:** OCWEN | |
| **State:** Florida | |
| **Reference:** OCWEN Account Number ▮▮▮▮ | |
| **Agent Locator:** 800.225.5227 | |

**Receiver Code:** 2355
**Payable to:** OCWEN Loan Servicing, LLC
**City, State:** Orlando, Florida
**Reference:** OCWEN Account Number ▮▮▮▮
**Agent locator:** 800.926.9400

**Western Union and MoneyGram may charge a fee for this service. Contact Western Union or MoneyGram for any payment or transaction limitations.

**This payoff amount is subject to change.** To the extent permitted by law, we reserve the right to correct any portion of this statement at any time.

---

PAYOFFE

NMLS # 1852

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**OCWEN Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

- All balances are subject to change as a result of any transactions, the assessment of any fees, or any costs being incurred with respect to the account, which occur prior to the application of payoff funds. If the account is referred to foreclosure, becomes subject to a bankruptcy proceeding, if it was not already, or has any other valid fees or costs assessed to it prior to the Payoff Quote Expiration Date, this payoff quote is deemed invalid, and a new payoff quote will be provided.

- Similarly, if any payments applied to this account within the prior thirty (30) days of the date of this payoff quote are reversed for any reason, including but not limited to, insufficient funds or a stop payment being placed on a check, this payoff quote is deemed invalid, and a new payoff quote must be obtained from us to reflect the correct amount due and owing. Subsequent payoff quotes will reflect the full amount due and are subject to change for the reasons referenced above.

**Overpayment or underpayment of payoff amount.** Upon receipt of payoff funds, we will verify all amounts due and contact the issuer of the funds in the event of any discrepancies. The payoff amount does not include any applicable positive escrow balance. After the payoff funds have been applied, and the account has been reconciled, any overpayment of funds will be returned to the issuer through regular mail within 20 days of the date the funds are received. Escrow account overages will be disbursed within 20 days. Please be aware to the extent permitted by law, if the payoff funds received are less than the total amount necessary to pay the account in full, then any escrow funds remaining after payment of insurance and taxes due may be applied to the mortgage at payoff. If the desire is not to have any remaining escrow surplus funds applied to the loan at payoff, we must be notified at least 5 days prior to submitting the payoff funds. This notification may be emailed to **payoffs@ocwen.com** or faxed to **407.737.6118**. In the event of an underpayment of the required stated payoff funds, if the escrow funds are insufficient to pay the account in full, we will return the funds and continue to accrue interest on the loan.

**Monthly payments due before payoff must still be paid by due date.** Issuance of this statement does not suspend the contractual requirement to make mortgage payments when due. If payoff funds are received after the expiration of the grace period, if such a period is applicable to this mortgage account, a late charge may be due. All late charges will be paid prior to the application of any payoff funds and preparation of the satisfaction of the Mortgage/Deed of Trust.

**Escrow disbursements will proceed until payoff funds are received.** Issuing this payoff statement will not stop future escrow disbursements. Property taxes or insurance may be paid after this quote is issued. If such disbursements create escrow advances and change the amount due to satisfy the mortgage, this payoff quote will be deemed invalid, and a new payoff quote must be obtained from us to reflect the correct amount due and owing. Subsequent payoff quotes will reflect the full amount due and are subject to change as referenced above.

**Past due fees still apply.** If the account is past due, collection expenses and legal fees may be accruing.

**Per diem interest may change.** If this is an adjustable rate mortgage, the per diem interest may change prior to payoff and the new per diem interest will be applicable for the payoff as well.

**The security instrument (Deed of Trust or Mortgage) will be released after payoff.** Upon receipt of the entire payoff amount, we will execute a release and discharge of the Deed of Trust/Mortgage and, if necessary, will file a withdrawal in connection with any legal action that may have been taken with regard to this mortgage account.

**Prepayment penalty waiver may be allowed.** If the terms of the mortgage documents allow for waiver of the prepayment penalty in certain circumstances, OCWEN must be provided with the requisite documentation to demonstrate waiver of a prepayment penalty in accordance with the terms of the mortgage documents. Such documentation must be provided to the Payoff Department within sixty (60) days following the date that the payoff was made. This documentation may be emailed to **payoffs@ocwen.com** or faxed to **407.737.6118**. Unless otherwise prohibited by law, no prepayment penalty will be waived unless and until we are notified of the qualifying event.

PAYOFFE

NMLS # 1852
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as an attempt to collect a debt from you personally. It is provided purely for informational purposes only with regard to our secured lien on the above referenced property.*



## Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

**Please verify the Social Security Number on file for tax reporting.** Please visit our website at www.ocwencustomers.com to verify the Social Security Number on file for the purposes of year-end tax reporting, if applicable.

**For questions** regarding this payoff quote, please contact our Customer Care Center at 800.746.2936  We are available Monday through Friday 8 am to 9 pm and Saturday 8 am to 5 pm ET

Sincerely,
*Loan Servicing*

---

NMLS # 1852

PAYOFFE

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

**CITIBANK, N.A AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-3**

**VS**  C.A. NO:1:18-cv-427-JJM

**KATHERINE L. CAITO INTERNAL REVENUE SERVICE**

## ANSWER OF DEFENDANT, KATHERINE L. CAITO

INTRODUCTION  Denied

1. Denied

2. Admit

3. Admit

4. Admit

5. Denied

6. Admit

7. Denied

8. Admit that a Note was executed. Denied as to the remainder.

9. Admit that a mortgage was executed. Denied as to the remainder.

10. Denied.

11. Denied

12.    Denied

13.    Denied

14.    Denied as no default notice was sent.

15.    Denied

16.    Denied

17.    Denied

18.    Denied

19.    Denied

20.    Denied

21.    Denied

22.    Denied

23.    Denied

24.    Denied

25.    Denied

26.    Denied.

27.    Denied

28.    Denied

29.    Denied

### First Affirmative Defense

Plaintiff's complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

The Plaintiff has no interest in the note or the mortgage.

### Third Affirmative Defense

Plaintiff was not the real party in interest on the date this action was commenced and is not shown to be authorized to bring this action.

### Fourth Affirmative Defense

Plaintiff has charged and/or collected payments from Defendants for attorney fees, legal fees, foreclosure costs, late charges, property inspection fees, title search expenses, filing fees, broker price opinions, appraisal fees, and other charges and advances, and predatory lending fees and charges that are not authorized by or in conformity with the terms of the subject note and mortgage Plaintiff wrongfully added and continues to unilaterally add these illegal charges to the balance Plaintiff claims is due and owing under the subject note and mortgage.

### Fifth Affirmative Defense

The promissory note was never endorsed and negotiated pursuant of the provisions of the Uniform Commercial Code.

### Sixth Affirmative Defense

Plaintiff did not accelerate the mortgage pursuant to the terms of the mortgage, prior to the filing of this action.

### Seventh Defense

The provisions of paragraph 22 of the mortgage were not complied with before any alleged acceleration of the loan was declared. The Defendant was not provided a default notice pursuant to the terms of the mortgage.

### Eighth Affirmative Defense

Plaintiff has failed to provide an original endorsed promissory note and mortgage as to file a foreclosure suit.

### Ninth Affirmative Defense

The Plaintiff's complaint was not verified with a person with any personal knowledge or information regarding the matters that the Plaintiff purported to assert. The allegations asserted as true were not sworn to under oath.

### Tenth Affirmative Defense

There is no trust with the name of American Home Mortgage Trust 2006-3, Mortgage Backed Pass-through Certificates Series 2006-3.

### Eleventh Affirmative Defense

Any purported Default Letter was not mailed by an agent of the Plaintiff.

Wherefore Defendant demands Judgment plus attorney fees and costs.

KATHERINE L. CAITO

By her attorney,

November 30, 2018

/s/ John B. Ennis
John B. Ennis, Esq. #2135
1200 Reservoir Avenue
Cranston, RI 02920
401-943-9230
jbelaw75@gmail.com

Defendants demands a Trial by Jury

6

## CERTIFICATION

I hereby certify that I emailed a copy of the above Answer to the following electronically, on this 30th day of November, 2018:

Samuel Bodurtha
Ethan Z. Tieger

/s/ John B. Ennis

CERTIFICATION

I hereby certify that I emailed a copy of the above Answer to the following electronically, on this 30th day of November, 2018:

Samuel Bodurtha
Ethan Z. Tieger

/s/ John B. Ennis

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CITIBANK, N.A., AS TRUSTEE FOR
AMERICAN HOME MORTGAGE ASSETS
TRUST 2006-3, MORTGAGE BACKED
PASS-THROUGH CERTIFICATES SERIES
2006-3,

        Plaintiff,

v.

KATHERINE L. CAITO,

        Defendant,

v.

INTERNAL REVENUE SERVICE,

        Interested Party.

C.A. No. 1:18-cv-00427-JJM

## PLAINTIFF CITIBANK, N.A., AS TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF ITS FIRST AMENDED VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE

Pursuant to Fed. R. Civ. P. 56, DRI LR 7, and DRI LR 56, Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 ("Citibank, as Trustee"), moves for entry of summary judgment on Count I of its First Amended Verified Complaint for Judicial Foreclosure.

In support of its Motion for Summary Judgment, Citibank, as Trustee submits the accompanying Memorandum of Law, Statement of Undisputed Facts, and supporting affidavit of Ocwen Loan Servicing, LLC.

WHEREFORE, Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3P1, respectfully

303537739v1 1010069

7

requests that this Court enter judgment in its favor on Counts I of its First Amended Verified Complaint for Judicial Foreclosure, enter an order authorizing Citibank, as Trustee to notice and conduct a foreclosure sale of the Property under Court oversight, and award any further relief this Court deems necessary and proper.

Respectfully submitted,

CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-3,

By Its Attorneys,

/s/ Ethan Z. Tieger
Samuel C. Bodurtha, Bar No. 7075
Ethan Z. Tieger, Bar No. 9308
HINSHAW & CULBERTSON LLP
56 Exchange Terrace
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
sbodurtha@hinshawlaw.com
etieger@hinshawlaw.com

Dated:    May 15, 2019

## LOCAL RULE 7(C) STATEMENT

In accordance with DRI LR 7(c), Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3, requests a hearing and oral argument on its Motion for Summary Judgment and estimates that one hour will be required.

/s/ Ethan Z. Tieger
Ethan Z. Tieger

2

303537739v1 1010069

## CERTIFICATE OF SERVICE

I, Ethan Z. Tieger, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on May 15, 2019.

*/s/ Ethan Z. Tieger*

Ethan Z. Tieger

303537739v1 1010069

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

CITIBANK, N.A., AS TRUSTEE FOR
AMERICAN HOME MORTGAGE ASSETS
TRUST 2006-3, MORTGAGE BACKED
PASS-THROUGH CERTIFICATES SERIES
2006-3,

         Plaintiff,

v.

KATHERINE L. CAITO,

         Defendant,

v.

INTERNAL REVENUE SERVICE,

         Interested Party.

C.A. No. 1:18-cv-00427-JJM

## AFFIDAVIT OF SONY PRUDENT OF OCWEN LOAN SERVICING, LLC IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Sony Prudent, hereby declare and state as follows:

1.    I am a Senior Loan Analyst for Ocwen Financial Corporation, whose indirect subsidiary is Ocwen Loan Servicing, LLC ("Ocwen"), and I am authorized to make this affidavit on behalf of Ocwen. Ocwen is the loan servicer for the subject mortgage loan on behalf of Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 ("Citibank, as Trustee").

2.    I am over the age of 18 and competent to testify as to the matters contained in this affidavit. I have access to the business records of Ocwen, including the business records for and relating to the loan at issue in this litigation. I make this affidavit based upon my review of those

303694645V2 1010069

96

records relating to the loan and from my own personal knowledge of how they are kept and maintained. The loan records are maintained by Ocwen in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity. Ocwen's records that relate to the loan that I reviewed and relied upon for the statements made in this Affidavit include images of the note, Ocwen's electronic servicing system and images of correspondence.

3.      I have reviewed Ocwen's records with respect to mortgage loan number ending 2929 for the borrower and Defendant, Katherine L. Caito (the "Borrower").

4.      Borrower executed a promissory note on June 6, 2006, in the original principal amount of $4,500,000.00 (the "Note") in favor of American Brokers Conduit. To secure repayment of the Note, Borrower granted a mortgage on property located at 16 Yosemite Valley Road, Westerly, Rhode Island (the "Property") to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for American Broker's Conduit (the "Mortgage").

5.      Ocwen has not received any payments from the Borrower since April 2012. As a result of her failure to meet her payment obligations under the Note and Mortgage, Borrower defaulted on the subject mortgage loan, with the mortgage account currently due for May 2012.

6.      On or about August 27, 2012, MERS, as nominee for American Brokers Conduit executed an assignment of the Mortgage to Citibank, as Trustee via an Assignment of Mortgage or Deed of Trust recorded in the Land Evidence Records for the Town of Westerly on October 9, 2012 at Book 1932, Page 724 (the "Assignment"). The Assignment conveyed MERS' legal interest in the Mortgage to Citibank, as Trustee.

303694645V2 1010069

7.     In September 2016, a Confidential Settlement and Release Agreement was entered into by and between the Borrower and Citibank, as Trustee to resolve and settle litigation previously commenced by the Borrower in 2013 and 2016. To preserve confidentiality, a copy of the Confidential Settlement and Release Agreement is not attached as an exhibit to this Affidavit. This Confidential Settlement and Release Agreement, among other terms, included a release by the Borrower of all known and unknown claims as to Citibank, as Trustee. In addition, the Confidential Settlement and Release Agreement provided, *inter alia*, for the following:

> **Acknowledgment of Debt**: Borrower [i.e. Caito] acknowledges and confirms that the Investor [i.e. Citibank, as Trustee] is the current mortgagee and Note holder, and that certain debt incurred by her on the June 6, 2006 note to American Brokers Conduit is owed to Investor. Borrower acknowledges the validity of the Assignment of Mortgage from American Brokers Conduit to Investor and the validity of the debt to the Investor, and hereby waives here right to challenge the validity of the Assignment and debt.

8.     Prior to the initiation of the pending judicial foreclosure action, Ocwen mailed Borrower notice of her default on the Note and Mortgage and right to cure to the Property address on May 11, 2018 (the "Notice of Default").

9.     Borrower failed to cure her default by June 17, 2018, as was required in the Notice of Default to avoid acceleration and sale. Borrower has not reinstated the Mortgage following her receipt of the Notice of Default. Following the Borrower's failure to cure her default, judicial foreclosure proceedings were then commenced to proceed to a foreclosure auction of the Property.

10.    According to Ocwen's records, as of May 14, 2019, approximately $4,622,474.40 is due and owing in principal, $1,350,190.85 is due and owing in interest, and $210,438.82 is due and owing in escrow payments on the Borrower's mortgage loan.

11.    Since Borrower's default on the Mortgage in May 2012, additional costs, fees and expenses have been incurred on Borrower's mortgage loan and applied to the unpaid balance.

3

303694645V2 1010069

Attached hereto as *Exhibit A* is a true and accurate copy of the Payment Reconciliation History on the Mortgage, itemizing all costs, fees and expenses applied to the account. All costs, fees, and expenses are necessary and proper and were incurred in compliance with the terms of the Note and Mortgage.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

4

303694645V2 1010069

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT. EXECUTED ON ___May 15___, 2019.

Ocwen Loan Servicing, LLC

BY: Sony Prudent
TITLE: Senior Loan Analyst

5

81

303694645V2 1010069

100

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND
CORRECT. EXECUTED ON ___May 15___, 2019.

Ocwen Loan Servicing, LLC

BY: Sony Prudent
TITLE: Senior Loan Analyst

5

83

303694645V2 1010069

100

## CERTIFICATE OF SERVICE

I, Ethan Z. Tieger, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on May 15, 2019.

/s/ Ethan Z. Tieger
Ethan Z. Tieger

303694645V2 1010069