**NO. 20-1100**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

CITIBANK, N.A AS TRUSTEE FOR AMERICAN HOME MORTGAGE
ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH
CERTIFICATES SERIES 2006-3

Plaintiff-Appellee

VS

KATHERINE L. CAITO
Defendant-Appellant

---

On Appeal from a Final Judgment Entered
After an Opinion and Order Granting Summary Judgment and
Denying a Motion to Strike
Entered in the United States District Court for the District of Rhode Island

---

**BRIEF OF APPELLANT
KATHERINE L. CAITO**

John B. Ennis
Rhode Island Bar # 2135
Court of Appeals Bar # 47641
John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920
Tel: (401)943-9230
Fax: (401)679-0035
Email: Jbelaw75@gmail.com

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD . . . . . . . . . . 6

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

STATEMENT OF THE  CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  .9

SUMMARY OF THE ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

THE RHODE ISLAND SUPREME COURT ON JUNE 2, 2020  IN *WOEL V. CHRISTIANA TRUST* RESTATED EXISTING CONTRACT LAW, AND ADOPTED STRICT COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO CITIBANK BECAUSE THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE MAY 11, 2018  NOTICE  STRICTLY COMPLIED WITH THE TERMS OF THE MORTGAGE  BY INCLUDING OBLIGATIONS IN THE DEFAULT NOTICE WHICH WERE NOT APPROPRIATE AND BY STATING AN INACCURATE AMOUNT DUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

THE DISTRICT COURT COMMITTED ERROR BECAUSE THE DEFAULT LETTER DID NOT PROVIDE A SPECIFIC DATE TO CURE THE PAST DUE PAYMENTS OF PRINCIPAL AND INTEREST. . . . . . . . . . . . . . . . . . . . . . . 24

THE DISTRICT COURT COMMITTED ERROR BY NOT APPLLYING THE
PRINCIPAL RAISED IN THOMPSON V. JPMORGAN CHASE AND NOT
FINDING THAT THE DEFAULT NOTICE DECEPTIVELY DID NOT ADVISE
CAITO THAT THE RIGHT TO REINSTATE WOULD EXPIRE FIVE DAYS
BEFORE A SALE                                                          27

THE DISTRICT COURT ERRED BY FINDING THAT
OCWEN COULD DEMAND CERTIFIED FUNDS TO CURE DESPITE
PARAGRAPH 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .         28

THE DISTRICT COURT COMMITTED ERROR BY GRANTING JUDGMENT
DESITE THE FACT THAT CITIBANK  DID NOT ACCELERATE THE NOTE .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO THE
IDENTITY OF THE TRUST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

THE MOTION TO STRIKE SHOULD HAVE BEEN GRANTED AND THE
COURT SHOULD NOT HAVE CONSIDERED AN AFFIDAVIT IN SUPPORT
OF SUMMARY JUDGMENT NOT FILED WITH THE MOTION . . . . . . . 33

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . .38

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . .         39

 ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40
.
TABLE OF CONTENTS OF ADDENDUM    . . . . . . . . . . . . . . . . . . . . . . 41

# TABLES OF AUTHORITIES

# CASES

*Abbenante v. Giampietro*
75 R.I. 349, 353, 66 A.2d 501, 503 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*De Luca v. Cinima*
 72 R.I. 346, 350, 51 A.2d 369, 370-71 (1947)) . . . . . . . . . . . . . . . . . . . . . . . . . . .25.

*In re Demers*
511 B.R. 233 (Bank. D. R.I., 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26.

*Flaherty v. Energy Nuclear Operations, Inc*
946 F. 3d 41 (1st Cir., 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Fryzel v. Domestic Credit Corp.*
120 R.I. 92, 98, 385 A.2d 663, 666 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . 25.

*Geary v. Hoffman*
 98 R.I. 413, 417, 204 A.2d 302, 305 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

Griggs-Ryan v. Smith
904 F. 2d 112 (1st. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Haviland v.Simmons*
45 A.3d 1246 (R.I., 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24-25

*Hedco v. Blanchette*
763 A. 2d 639 (R.I., 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-26

*Industrial Trade Unions of America v. Metayer*
69 R.I. 199, 203 32 A. 2d 789, 790-91 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Johnson v. Johnson*
24 R.I. 571 (R.I., 1903) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Lambert v. Lambert*
77 R.I. 463 (R.I., 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32.

*Maderios v. Savin*
 418 A.2d 839, 842 (R.I.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Martins v Federal Housing Finance Agency*

4

214 F.Supp.3d 163 (D. R.I., 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Medina-Muñoz v. R.J. Reynolds Tobacco Co
896 F. 2d 5 (1ˢᵗ Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mesnick v. Gen. Elec. Co.
950 F. 2d 816 (1ˢᵗ Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ocasio-Hernández v. Fortuño-Burset
777 F.3d 1, 4 (1st Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

Pinti v. Emigrant Mortg. Co. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13
33 N.E.2d 1212 (Mass. 2015)

Rhode Island DEPCO v. Coffey & Martinelli et al
821 A.2d 222 (R.I., 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      16

Rotelli v. Cantanzaro
686 A.2d 91, 94 (R.I.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Russolino v. A. F. Rotelli & Sons
85 R.I. 160, 163, 128 A.2d 337, 340 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

State v. Arpin
122 R.I. 643, 657, 410 A.2d 1340, 1347 (1980) . . . . . . . . . . . . . . . . . . . . . . . . 13

Tate v. Peter Charles Reynolds, Inc.,
622 A.2d 449, 450 (R.I. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..26

Thompson v. JPMorgan Chase Bank, N.A.
915 F.3d 801 (First Cir., 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

U.S. Bank Trust v. Jones
925 F. 3d 534 (1ˢᵗ. Circuit, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,33,34,36

Woel v. Christiana Trust
228 A.3d 339 (RI, 2020)) . . . . . . . . . . . . . 2, 6,9, 12,13,15, 17,18,20,24,27,28,31,37

**STATUTES**

R.I.G.L 34-27-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

R.I.G.L 34-27-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28  U.S.C. 191 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.8

COURT RULES

Fed. R. Civ. Pro 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

The Appellant contends that Oral Argument should be heard in this case, due to the issues raised in this case, which are derivative of the Rhode Island Supreme Court in the case cited herein of *Woel v. Christiana Trust.*, 228 A.3d 339 (R.I., 2020).This case was the first Rhode Island case, which clearly distinguished the requirements of curing a default and reinstating after acceleration. The Supreme Court interpreted paragraph 19 of the mortgage as limiting fees, expenses and cures of  any default of any other covenants or agreements, including escrow obligations to be included in the reinstatement after acceleration. Thus this argument should be considered by the Court in Oral Argument.

## JURISDICTIONAL STATEMENT

Citibank N.A. claiming to be Trustee for a trust, which it identified as American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 ("Citibank") filed an action in Case No, 1:18-cv-00427( Appendix 1) against Katherine Caito ("Caito") seeking a Judicial Foreclosure, alleging diversity jurisdiction as the basis for the Court's jurisdiction in its Amended Complaint (Appendix 2). Caito answered the complaint( Appendix 3) and Caito filed a Motion for Summary Judgment (Appendix 3) on Count I of its complaint seeking an Order from the Court accelerating the mortgage loan debt in accordance with the terms of Paragraph 19 and 22 of the mortgage and for a foreclosure sale under Court oversight, an Order authorizing a foreclosure sale and attorney fees and costs. Caito objected to this Motion (Appendix 4) and filed a Summary Judgment Motion (Appendix 5)  seeking to dismiss the complaint claiming lack of strict compliance with the note and mortgage and also filed a Motion to Strike (Appendix 6) with the only affidavit filed with Citibank's Motion for Summary Judgment. (Appendix 7). Caito filed a Response to the Motion for Summary Judgment (Appendix 8) as did Citibank (Appendix 9). Caito filed a Reply (Appendix 10) to Citibank's Response and Citibank filed a  Reply to Caito's Response. Citibank also filed a Response to the Motion to Strike (Appendix 11) to

which Caito filed a Reply (Appendix 12)  On December 18, 2019 by a

Memorandum Order (Appendix 13) the Court granted the Motion for Summary

Judgment for the Citibank, and denied the Motion for Summary Judgment and

Motion to Strike filed by the Defendant.  On January 17, 2020, Defendant filed a

Notice of Appeal, (Appendix 14)  in accordance with  FED. R. App. Pro. 4(a) and

paid the requisite filing fee. On January 27, 2020, the District Court entered a

Judgment (Appendix 15) making certain findings and authorizing the Citibank to

conduct a public sale in the manner provided by R.I.G.L. 34-27-4(a) and 4(b)

within 120 days of January 27, 2020. This Appeal is from a Final Judgment that

disposes of all parties' claims by ordering a sale of the property. Consequently, this

Court has jurisdiction over this appeal pursuant to 28 U.S.C. 191 To date no sale

has occurred.

## STATEMENT OF THE ISSUES

The Appellant presents the following issues for review by this Court:

1.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT
TO CITIBANK BECAUSE THERE WAS A GENUINE ISSUE OF MATERIAL
FACT AS TO WHETHER THE MAY 11, 2018  NOTICE  STRICTLY
COMPLIED WITH THE TERMS OF THE MORTGAGE  BY INCLUDING
OBLIGATIONS IN THE DEFAULT NOTICE WHICH WERE NOT
APPROPRIATE AND BY STATING AN INACCURATE AMOUNT DUE  IN
CONTRAVENTION OF RHODE ISLAND STATE LAW AS SET FORTH IN
WOEL V. CHRISTIANA TRUST

2.    THE DISTRICT COURT COMMITTED ERROR BY FINDING THAT
THE DEFAULT LETTER PROVIDED A SPECIFIC DATE TO CURE THE
PAST DUE PAYMENTS OF PRINCIPAL AND INTEREST

3.    THE DISTRICT COURT COMMITTED ERROR BY
NOT FINDING THAT THE DEFAULT NOTICE DECEPTIVELY DID NOT
ADVISE CAITO THAT THE RIGHT TO REINSTATE WOULD EXPIRE FIVE
DAYS BEFORE A SALE

4.    THE DISTRICT COURT ERRED BY FINDING THAT
OCWEN COULD DEMAND CERTIFIED FUNDS TO CURE DESPITE
PARAGRAPH 19 OF THE MORTGAGE

5.    THE DISTRICT COURT COMMITTED ERROR BY GRANTING
JUDGMENT DESPITE THE FACT THAT CITIBANK  DID NOT
ACCELERATE THE NOTE

6.    THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO THE
IDENTITY OF THE TRUST PRECLUDING SUMMARY JUDGMENT

7.    THE DISTRICT COURT COMMITTED ERROR BY DENYING THE
MOTION TO STRIKE  THE AFFIDAVIT OF SONY PRUDENT

8.    THE DISTRICT COURT COMMITTED ERROR BY NOT DENYING
SUMMARY JUDGMENT FOR THE DEFENDANT BECAUSE THE
PLAINTIFF DID NOT ACCURATELY ESTABLISH THE AMOUNT IN
DEFAULT AND DID NOT ACCURATELY ESTABLISH THE AMOUNT
WHICH WAS OWED BY THE DEFENDANT

## STATEMENT OF THE CASE

On June 6, 2006,  Caito signed a promissory note (Appendix 16) payable to

American Brokers Conduit in the amount of $4,500,000.00, which note was an

Adjustable Rate Note with negative amortization,  payable in thirty years, which

allowed the borrower to pay less than the fully amortized monthly payment for, with any amount of interest not paid monthly to be added to the principal balance of the note, not to exceed 125% of the original principal balance. The Adjustable interest rate would be calculated monthly on the new principal balance each month. The loan interest rate was 1.75% for the first 24 days of the loan(known as a teaser rate ) followed by a rate of 7.782% for one month followed by an adjustable interest rate commencing August 1, 2006 based on an United States 12 Month Treasury Securities plus an additional margin rate of 3.5% , which was added to the Index to determine the monthly payment of interest. At the same time and date on June 6, 2006, Caito executed a Mortgage (Appendix 17) to Electronic Registration Systems, Inc. ("MERS") as nominee for American Brokers Conduit and its successors and assigns, granting it the statutory power of sale and securing the obligation on her home located at 16 Yosemite Valley Road, Westerly, Rhode Island.

American Home Mortgage was the original loan servicer for this mortgage, which was modified on September 25, 2006 pursuant to a Mortgage Modification Agreement, ( Appendix 18 ) which corrected the incorrect adjustable rate formula at the closing and reduced the amount of the margin rate in the Adjustable Rate Rider to 3.125% from 3.5% effective August 1, 2006. On August 27, 2012

MERS as nominee for American Brokers Conduit its successor and assigns
executed what it referred to as an Assignment of Mortgage (Appendix 19) to
Citibank, N.A. as Trustee for an entity identified by MERS as American Home
Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series
2006-3. Ocwen Loan Servicing, LLC ("Ocwen") mailed Caito a letter dated May
11, 2018, (Appendix 20) which it referred to as a default letter. In this letter
Ocwen demanded that Caito cure an amount it claimed to be past due of Principal
and Interest of $1,755,311.72, escrow of $419,235.00, Late Charges of $21,282.05
and Fees and Expenses of $6,086.49 for a total of $2,201,915.26.

## STANDARD OF REVIEW

This Court in *Flaherty v. Energy Nuclear Operations, Inc.,* 946 F. 3d 41 (1st
Cir., 2019) set forth the standard for Summary Judgment:

We review a district court's grant of summary judgment de novo, construing the
record in the light most favorable to the nonmovant and resolving all reasonable
inferences in that party's favor. Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4
(1st Cir. 2015); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.
1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

This Court has held that Summary judgment is appropriate when the moving party
shows that "there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is
"one that must be decided at trial because the evidence, viewed in the light most

flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). The Appellant presented material facts in support of her objection to Summary Judgment and in support of her Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENTS

The Appellant contends that the District Court committed error by not granting Summary Judgement despite factual disputes raised by the Appellant, particularly as to the amount due on the promissory note. The District Court also erred by allowing a Judicial Foreclosure to proceed despite the failure to accelerate thirty days before the case was filed. She also contends that the District Court committed error by admitting purported business records of PHH contrary to this Court's holding in U.*S. Bank Trust v. Jones.* The District Court also committed error by not applying strict compliance with the terms of the note and the mortgage.

## ARGUMENT

**THE RHODE ISLAND SUPREME COURT ON JUNE 2, 2020  IN *WOEL V. CHRISTIANA TRUST* RESTATED EXISTING CONTRACT LAW, ADOPTED STRICT COMPLIANCE**

The District Court did not have the benefit of the Rhode Island Supreme Court

opinion in *Woel v. Christiana Trust,* (No. 2018-347 Appeal, June 2, 2020)

(Appendix 21) when it granted Summary Judgment for Citibank and denied the

Motion for Summary Judgment of Caito. *Woel* specifically adopted the reasoning

in the Masschusetts Supreme Court case of *Pinti v. Emigrant Mortg. Co.*

33 N.E.2d 1212 (Mass. 2015) and held that strict compliance without a

demonstration of prejudice applies to any mortgage foreclosure cases:

Because the default notice failed to strictly comply with paragraph 22, defendants
failed to satisfy the condition precedent to a valid foreclosure. Accordingly, we
deem the foreclosure sale to be void.

      *Woel* stated:

The potential impact this new rule of law could have on the finality of foreclosures
has not escaped us. **To the extent that this opinion is viewed as a new rule of
law**, it is to be given prospective effect. *See State v. Arpin,* 122 R.I. 643, 657, 410
A.2d 1340, 1347 (1980) (explaining that, in the past, the Court "has chosen to
apply new rules of law in the manner best suited to serve the interests of justice
and to avoid hardship"). Specifically, the pronouncement in this opinion applies to
the case at bar **and to cases pending in the Superior Court in which this specific
issue has been, or may be, raised.** (emphasis added)
Since no sale has occurred resulting in a foreclosure and this case is pending, *Woel*

applies to the issues raised in this case.

      *Woel* specifically distinguished between curing a default and reinstating after

acceleration:

The language in paragraphs 19 and 22 illustrates the distinction between curing the
default after acceleration and reinstating the mortgage after acceleration. Paragraph

22 explains that "the right to cure" is the mortgagor's right to pay the pre-acceleration default amount owed and thus be protected from acceleration. If the mortgagor fails to cure, then the mortgagee may accelerate the note, with the entire amount of the note immediately due and owing-not just the pre-acceleration default amount. The mortgagor may reinstate the mortgage-which would return the mortgage to its pre-acceleration status with monthly payments-by satisfying the four conditions set out in paragraph 19. Under paragraph 19, to reinstate the mortgage after acceleration, the mortgagor must: (1) cure the default; (2) cure any default of any other covenant or agreement in the mortgage; (3) **pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees** ; and (4) take any action as reasonably required by the mortgagee to protect its interest in the mortgage.  (emphasis added)

The note specified that the default letter could only demand the amount due for principal and interest up to the cure date certain specified in the default letter.

Ocwen's letter included charges for escrow and fees and costs which could not be included in the amount necessary to cure.  Strict compliance mandates that all aspects of the notices mailed to the borrower must strictly comply with the terms of the mortgage and could not be deceptive:

As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

Strict compliance required an accurate amount of default to be stated. In *Woel* at page 11, the Court indicated its concern that the homeowner not be misled by the mortgagee:

Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict

compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and **will not be misled** by a default notice provided by a mortgagee.

This letter was deceptive by not stating the exact accurate amount to cure the amount of principal and interest in arrears and deceptively told Caito that she had to pay escrow, late fees and disputed fees and expenses not required to cure, contrary to paragraph 22 and paragraph 7 of the Note, which allowed only a demand for past due principal and interest. Other fees and expenses were required to be demanded in an acceleration notice. *Woel* recognized this established provision of mortgage law by noting the difference between the amounts necessary to cure the default and the amounts necessary to reinstate **after acceleration**. The obligation arises from the Note, not the mortgage and the Note specifically requires that after acceleration, the mortgagor has an additional thirty days prior to the Lender being able to invoke any remedy under the Security Instrument, whether statutory power of sale or judicial foreclosure, pursuant to R.I.G.L 34-27-1, *Woel* clarified that acceleration had to be followed by a demand for all sums secured by the Security Instrument, the Court stated:

Paragraph 22 of the mortgage contract clearly and unambiguously required that, "prior to acceleration[, ]" the mortgagee must provide notice of default to the

mortgagor and include certain information within that notice, including informing the mortgagor of "the right to reinstate after acceleration[.]" As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

Established Rhode Island law makes it clear that transactional documents executed together at the same time are to be considered together as integrated documents.  In  *Rhode Island DEPCO v. Coffey & Martinelli et al* 821 A.2d 222 (R.I., 2003)  the Court held that a guaranty had to be read together with a promissory note executed at the same time and stated:

We also have held, in *Rotelli v. Cantanzaro,* 686 A.2d 91, 94 (R.I.1996), that instruments executed in the course of a single transaction at the same time and to accomplish the same purpose should be read and construed together.

This reference was to *Rotelli*, in which  the Court had stated this established contract law interpretation, which required the  Mortgage to incorporate the terms of the note:

  It has long been a general rule in this jurisdiction that instruments executed "at the same time, for the same purpose and in the course of the same transaction * * * are to be considered as one instrument and are to be read and construed together."[1] *Old Kentucky Distributing Corp. v. Morin,* 50 R.I. 163, 165, 146 A. 403, 404 (1929)*; see also Maderios v. Savino,* 418 A.2d 839, 842 (R.I.1980) (promissory notes executed as part of single transaction construed together to determine the mutual rights and obligations of the parties)

Thus in addition to the requirements to cure the arrearage, before Defendants could send a Notice of Sale or file a Judicial Foreclosure on behalf of the

mortgagee, *Woel* made it clear that strict compliance with the mortgage and the note required a particular procedure. Caito had to be provided a default letter in strict compliance with the note and mortgage which was not deceptive and included an accurate statement of the amount due for principal and interest providing her an opportunity to cure on a particularly specified date. If Caito did not cure, Paragraph 10 of the Note required Citibank to send a notice accelerating the mortgage note, providing Caito thirty days from the date the notice was given pursuant to paragraph 15 of the mortgage to reinstate, which included all sums secured by the mortgage, not just the past amount due for principal and interest. The note provided that if Caito did not reinstate the note after receipt of an accurate Notice of Acceleration detailing the included the amount needed to reinstate, including the amount cure the default, all subsequent payments and all other sums secured by the mortgage, including reasonable fees and expenses as specified in paragraph 19 of the mortgage, the mortgagee could then either exercise the statutory power of sale or seek other relief under the Security Instrument, without further demand. In *Woel,* the Court was concerned about the homeowner being misled:

In this case, the default notice failed to inform plaintiff of the right to reinstate the mortgage after acceleration. Paragraph 22 provides that the default notice "shall" inform plaintiff "of the *right to reinstate* after acceleration[.]" (Emphasis added.)

The default notice in this case, however, provided: "You have the *right to cure* the default after acceleration[.]" (Emphasis added.) These terms are not synonyms; yet a fair reading of the default notice suggests that, if plaintiff cured the default after acceleration, the mortgage would be reinstated. This is misleading, inaccurate, and, at best, incomplete.

Citibank did not forward a Notice of Acceleration to Caito and no specific amount accelerated was stated as due, which the Defendant would be advised to reinstate in thirty days or face statutory power of sale or Judicial foreclosure without further demand. Instead Citibank filed this action and asked the Court to order that the loan had been accelerated, which relief was not granted in the Judgment or in the Memorandum Order granting Summary Judgment. Thus to date no Notice of Acceleration of the has been provided to Caito. She was not provided such notice and provided an opportunity to reinstate, as required by the note and mortgage to avoid acceleration and sale. However the Memorandum Opinion confused curing a default and reinstating an accelerated loan:

The default notice also stated that she had the right to reinstate the loan and the right to bring a court action to protest the default determination. She did not cure the default;

*Woel* made it clear that a default notice was not the same as reinstating the loan, which can occur only after acceleration. *Woel's* standard of strict compliance with the mortgage and note mandates that the Judgment be reversed and the complaint dismissed with prejudice on this issue.

18

**THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO CITIBNANK BECAUSE THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THETHE MAY 11, 2018 NOTICE  STRICTLY COMPLY WITH THE TERMS OF THE MORTGAGE  BY INCLUDING OBLIGATIONS IN THE DEFAULT NOTICE WHICH WERE NOT APPROPRIATE AND BY STATING AN INACCURATE AMOUNT DUE**

Paragraph 22 and paragraph 7 of the note provides that the Lender must send a notice of default which contains specific language as a condition precedent to acceleration and sale. Ocwen's letter, contrary to the terms of the note and mortgage, included a demand for escrow of $419,235, late charges of $21,282.05 and various fees and expenses of $6,086.49. None of these charges were required to cure pursuant to the note or the mortgage. The Court committed error by not finding that Citibank sent a defective letter which did not  strictly comply with the terms of the mortgage, due to its listing of fees and expenses and escrow purportedly due, which were not permitted by the note or the mortgage. The inclusion of anything other than principal and interest due in a default letter rendered that letter defective. Caito presented evidence of the recorded loan modification  which was executed and recorded. The lower interest rate was not applied from August 1, 2006 through the present.  Ocwen's letter was not accurate and  did not state the exact amount of the arrearage.  It contended  that the default

consisted of $2,201,915,26, which included the inaccurate amount of fees of

$6,086.49  plus the additional amounts which could be obtained by calling Ocwen

at 800-746-2936 did not comply with *Woel*  The addition of other charges for

charges assessed after the date of the letter,  under the terms of the mortgage and

note could not be a component of the default letter. Such subsequent charges could

not be added on to the original arrearage, since they were not specified with an

actual amount and they were not subject to the thirty day right to cure and failure

to pay this specific amount could not be the basis of an acceleration of the note.

The letter stated that Caito had  to call  to obtain the exact amount due to cure.

   The letter's assertion that the Defendant owed $2,201,915.26was also not

accurate  This amount, claimed to be the arrearage,  included multiple

unreasonable and unnecessary charges, which were charged by Ocwen to the

mortgage loan account contrary to the terms of the mortgage

   As indicated by the Defendant's affidavit, this amount, claimed to be the

arrearage, included the following improper charges which rendered the default

notice inaccurate, even assuming that they could be included in a default notice.

Caito provided her affidavit (Appendix 22  ) and an affidavit of Joseph Manera, a

Title Attorney (Appendix  23 ) to dispute these charges  as not accurate.

These charges which resulted in the $6086.49 being inaccurate were the following derived from a purported Payoff statement (Appendix 24) mailed to Caito for:

| 11-14-16 | FC thru Judgment | $556.25 |
| 4-1-16 | Selling Office/Sheriff Cancel fee | $425.00 |
| 3-8-16 | Sale Publication | $1203.76 |
| 2-22-16 | Selling Officer/Sheriff Cancel Fee | $425.00 |
| 2-1-16 | FC Thru complaint | $125.00 |
| 2-1-16 | Selling Officer/Sheriff Cancel Fee | $425.00 |
| 2-1-16 | Sale Publication | $714.88 |
| 7-23-13 | FC thru Title search | $520.00 |

These total fees totaled $4394.90. The Defendant's affidavit indicates in a previous attempted foreclosure action that she never received an accurate default letter pursuant to the terms of the mortgage which would have allowed any exercise of the statutory power of sale. Thus all the foreclosure related charges were not accurate and should not have been included in the purported default notice. The previous "default letter" of Ocwen in 2015(Appendix 25) contained the same deficiencies as the May 11, 2018 and also contained a deficiency as to the exact date requirement. Thus any fees derived from this letter should not have been charged.

Defendant denied in her affidavit that no sheriff ever was hired to sell her home and that no Selling Officer was hired to sell her home. She also testified that no judicial foreclosure was commenced in 2013-2016, which could result in a Judgment being entered. Despite these disputed facts, the purported default letter

included three fees for service of process which did not occur and were charged to the mortgage loan account as indicated in the Payoff statement.

She also testified in her affidavit that there was no  additional hour court appearance of $50.00 on February 2, 2016 as there was no  Court appearance  for an attorney to be paid an extra hourly fee on that date and that there was never any servicer of process on the Defendant  by Ocwen or any other entity. Thus these fees, which were included in the Ocwen May 11, 2018 letter rendered the letter inaccurate due to these charges being neither reasonable nor necessary, even if included in an acceleration notice. She also disputed the three skip trace fees, totaling $16.06. because such fees are incurred to determine  the address of the borrower. However as indicated by her affidavit, the Defendant had always lived at her home at 16 Yosesmite Valley Road, Westerly, RI, 02891 and there was no reason to search for her address, as Ocwen knew that she was living in the house.

The total fees of $6086.49 also included property inspection fees for the period from April, 2013 to May 2018 in the amount of $458.74 for 37 separate charges.  At all times Ocwen was aware that the Defendant was living in the property and that she had an attorney, throughout this entire time.  She paid the taxes for the property from 2016 through 2018. Ocwen knew that the property was not abandoned and that there was regular contact with the Defendant or her

attorney. She also indicated that at no time did any person come into her home to inspect the condition of the house. Caito alleged that Ocwen's computer system automatically ordered property inspection fees when a loan is in arrears. As a result of improper charges referenced herein, the purported default notice contains inaccurate charges included in the $6086.49 charges for fees and expenses.

The record and Caito's affidavit indicates that all loan servicers, including American Home Mortgage, American Home Mortgage Services, Inc. (later changed its name to Homeward Residential, Ocwen and subsequently PHH Mortgage Services have utilized the Margin Interest rate of 3.5% instead of 3.125% based on the principal balance of $$4,500,000.00 as indicated in a Notice of Payment Change dated May 14, 2018. (Appendix 26).The annual amount of interest charged on$4,500,000.00 based on the original 3.5% margin rate of the Mortgage was $157,500.00 and the amount of annual interest on $4,500,000.00 based on the 3.125% margin rate of the Modified Mortgage Agreement was $140,625.00 representing an annual difference in interest of $16,875.00 starting with the payment due on September 1, 2006 for 11 years and 9 months, resulting in an inaccurate amount of interest due in the Ocwen May 11, 2018 letter of $185,641.06 for the 11 years and $12,656.25 for the nine months from August 1, 2017 through May 11, 2018 which constituted an inaccurate overstatement of

interest due in the letter of $198,297.31. It should be noted that the letter did not distinguish between past due principal and interest. Since the amount of the alleged arrearage was not accurate, the transmittal of an inaccurate amount to cure did not strictly comply with the terms of the mortgage and note. A condition precedent to acceleration and filing this action was not met. For this reason, the Judgment of the District Court should be reversed and the Complaint dismissed with prejudice.

**THE DEFAULT LETTER DID NOT PROVIDE A SPECIFIC DATE TO CURE THE PAST DUE PAYMENTS OF PRINCIPAL AND INTEREST**

This letter did not reference a specific date for Caito to cure the arrearage. Rather it stated that the arrearage had to be cured on or before June 17, 2018. Thus there was no specific date to cure as the phrase on or before includes every date from the date of the letter until June 17, 2018. The notice did not specify a particular date, by which the cure amount had to be paid or face acceleration by Ocwen Loan Servicing and sale of the mortgaged premises. No person could determine from the letter the actual date on which to cure. This letter was deceptive due to this deceptive range of dates, some of which were within thirty days, contrary to the mortgage and the note. Paragraph 22(c) was not complied with because it requires a specific date stated. Under *Woel*, there is no strict compliance and at best there is an ambiguity in the language. In *Haviland v. Simmons,* 45 A.3d

1246 (R.I., 2012), the Rhode Island Supreme Court decided that if there was any

ambiguity in a contract, that such issue had to be resolved at trial:

Where an ambiguity exists in a provision of a contractual 1259*1259 document,
the construction of that provision is a question of fact." *Fryzel v. Domestic Credit
Corp.,* 120 R.I. 92, 98, 385 A.2d 663, 666 (1978) (citing *Geary v. Hoffman,* 98 R.I.
413, 417, 204 A.2d 302, 305 (1964); *Russolino v. A. F. Rotelli & Sons,* 85 R.I. 160,
163, 128 A.2d 337, 340 (1957)). We are of the opinion that, although an express
agreement was entered into, based on our review of the contract in its entirety, an
ambiguity exists concerning the terms of the agreement relative to the standard
under which Haviland's reappointment is to be evaluated.
*Haviland*, at pp. 1258-1259

In *Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503 (1949),

the Supreme Court reviewed a notice case in which a specific date was not

provided for a Notice to Quit. A question existed as whether the tenant had to quit

on the next day after his tenancy terminated on February 29, 1949. The Court

held:

We are unable to agree with this contention. If plaintiffs were demanding the
premises freed of the existing tenancy at $25 a month defendant was entitled to an
**unequivocal** notice to quit on the day next succeeding the last day of such
tenancy.

Thus the Court held that in a Notice case, for a notice to be effective it had to be

unequivocal as to the time of compliance, which did not occur in this case.

In the case of *Hedco v. Blanchette*, 763 A. 2d 639 (R.I., 2000), the Rhode

Island Supreme Court upheld this principle when it stated:

In considering the sufficiency of a termination notice, we have repeatedly stated [**8] that "the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given." *Tate v. Peter Charles Reynolds, Inc.,* 622 A.2d 449, 450 (R.I. 1993) (per curiam) (citing *De Luca v. Cinima,* 72 R.I. 346, 350, 51 A.2d 369, 370-71 (1947)). Although a tenant may be clearly apprised of the termination of his lease, we have determined a notice to be fatally defective when it ordered the tenant to quit on the last day of his term instead of the first day following it, *Industrial Trade Unions of America v. Metayer,* 69 R.I. 199, 203, 32 A.2d 789, 790-91 (1943), or when it did not clearly indicate that an agent was acting on behalf of the landlord. *Tate,* 622 A.2d at 450.

Thus the Court held that in a Notice case, for a notice to be effective it had to be

unequivocal as to the time of compliance, which did not occur in this case.

In *Martins v Federal Housing Finance Agency,* 214 F.Supp.3d 163 (D.

R.I., 2016), the District Court had likewise held:

in real estate contracts, when required notice fails to specify particular dates, inform the borrower of his or her right to reinstate a loan after acceleration, or inform the borrower of the ability to bring a court action to contest acceleration or foreclosure, that notice is insufficient. *In re Demers,* 511 B.R. at 239; *Hedco, Ltd. v. Blanchette,* 763 A.2d 639, 642, 643 (R.I. 2000) (failing to specify the termination date in a lease by providing **the exact date** by which tenant could pay was fatal to required notice). (emphasis added)

The District Court found that the phrase on or before June 17, 2018 was a specific

date, which strictly complied with the terms of paragraph 22(d) by stating in its

Order granting Summary Judgment that "the "on or before" language it used in the

notice tracks the language of Paragraph 22(d)" However strict compliance pursuant

to Rhode Island law requires a specific date to be provided pursuant to paragraph

22(c) and limits paragraph 22(d)'s applicability to the requirement that the borrower be advised that failure to cure on or before the dated specified in the notice may result in acceleration and sale. Here there was no specific unequivocal date specified to cure pursuant to paragraph 22(c). Thus the Court erred in finding that the notice specified a particular date as required by paragraph 22(c).

**THE DISTRICT COURT COMMITTED ERROR BY NOT FINDING THAT THE DEFAULT NOTICE DECEPTIVELY DID NOT ADVISE CAITO THAT THE RIGHT TO REINSTATE WOULD EXPIRE FIVE DAYS BEFORE A SALE**

The Rhode Island Supreme Court in *Woel* and this Court in *Thompson v. JPMorgan Chase Bank, N.A*. CA. 915 F.3d 801 (2019) set forth relevant requirements for strict compliance with the terms of the mortgage, which were not complied with in this case. Caito contended in her Motion to Dismiss that the Court should follow *Thompson* in which this Court reversed a foreclosure sale due to the fact that the purported default notice failed to notify the mortgagor of the limitations of the right to reinstate. Caito made the same argument, which was made in *Thompson*, due to the strict compliance required under Rhode Island law and the obligation not to provide language in the notice which was deceptive, the failure to advise the mortgagor that reinstatement could occur no later than five days before a scheduled sale or an Order enforcing the Security Instrument was fatally defective. Her contention regarding prejudice when *Woel* followed

*Thompson's* holding that deceptive language would not be allowed in a default notice and that no prejudice was required. The District Court found that *Thompson* was not applicable to Rhode Island law and erroneously did not consider this argument.

Pursuant to *Woel*, any analysis in *Thompson*, applies to Rhode Island mortgage cases. This Court's analysis of the interplay between paragraph 19 and paragraph 22 of the mortgage in *Thompson* should have been considered by the District Court. Paragraph 19 clearly states that a borrower has up to five days prior to the sale date to reinstate the mortgage loan, which had been accelerated by curing the arrearage. In *Thompson*, the default letter had deceptively advised the mortgagee about the right to reinstate without providing the mortgagee the information that this right ended five days before the sale. Here a similar notice, which omitted the paragraph 19 limitation was given to the Defendant and told her how to pay, the address and the amount due by certified funds and provided her with a phone number to call and the name of a contact person to contact to reinstate, not cure. For this reason, the Default Notice did not strictly comply with the terms of the mortgage and the note and the Judgment should be reversed and this action should be dismissed with prejudice.

**THE DISTRICT COURT ERRED BY FINDING THAT OCWEN COULD DEMAND CERTIFIED FUNDS TO CURE DESPITE PARAGRAPH 19**

The terms of the note and mortgage did not include any other conditions other than to pay the exact amount of past due principal and interest to cure The notice sent to the defendant required certified funds. However the only provision in the mortgage, which requires payment in certified funds is paragraph 1 which states:

However if any check or other instrument received by Lender as payment under this Note or this security instrument is returned to Lender unpaid, lender may require subsequent payments to due under the Noe and this Security Instrument be made in one or more of eh following forms, as selected by Lender: (a) cash; (b) money order: (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer

Defendant, stated in her affidavit that she never made a payment for which funds were returned. Thus there was no contractual basis for this demand for certified funds and this additional term did not strictly comply with the terms of the mortgage and imposed an additional condition, not authorized by the note or he mortgage. The District Court erroneously held that Paragraph 22 provided a basis for requiring certified funds despite the limitation of certified funds to situations in which "bad checks" had been provided and ignored the clear and concise language

of paragraph 1's limitation to certified funds in limited situations. Ocwen imposed a condition, which the loan documents did not authorize. The District Court erred by not finding this condition was not authorized by the loan documents. Since it was not allowed by the loan documents, strict construction requires that the Judgment should be reversed and the case dismissed with prejudice.

## THE DISTRICT COURT COMMITTED ERROR BY GRANTING JUDGMENT DESITE THE FACT THAT CITIBANK DID NOT ACCELERATE THE NOTE

The District Court committed error by ignoring the fact that the Plaintiff did not mail the Defendant an acceleration notice pursuant to the terms of the mortgage and note prior to filing this complaint. Citibank admitted such and demanded in its complaint that the Court order the mortgage accelerated, which was not done. However an acceleration letter is an essential component to commencing a Judicial Foreclosure or to exercise the statutory power of sale as defined and detailed in the mortgage contract and the promissory note. This is mentioned in paragraph 22 of the mortgage, which is the precondition to acceleration and sale:

Acceleration; Remedies. **Lender shall give notice to Borrower prior to acceleration** following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). . . Lender at its option **may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE** and any other remedies permitted by Applicable Law. Lender shall be

entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

The promissory note in paragraph 11 states:

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*Woel* noted that  the mortgage contract allows the mortgagor to reinstate **after acceleration** in order to avoid the statutory power of sale or any other contractual relief sought by Citibank. Paragraph 19 is entitled **Borrower's Right to Reinstate After Acceleration** and provided the reinstatement after acceleration, in order to avoid sale.  *Woel* affirms this position and indicated that anything other than monthly payments of principal and interest could be included in a default notice with all other obligations arising when the note is accelerated, giving the homeowner 30 days to reinstate. It could not accelerate because a default letter strictly compliant with the note and mortgage were never mailed. Thus the Judgment should be reversed and the complaint dismissed with prejudice.

**THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO THE IDENTITY OF THE TRUST**

Caito presented four certified copies of the records of the Security and Exchange Commission (Appendix 26-29) which indicated that the actual name of the Trust of which Citibank was the trustee was American Home Mortgage Trust 2006-3. The name of the purported assignee of the mortgage referenced the certificates issued by the actual trust, which was the issuer referred to in the SEC records. An Order ( Appendix 30)filed in the United States District Court for the Northern District of Texas also indicated that the actual name of the trust was American Home Mortgage Trust 2006-3.  Rhode Island law is clear that an assignment of a  mortgage is conveyance, which requires delivery to an actual entity. *Johnson v. Johnson,* 24 R.I. 571(R.I., 1903)  with delivery a question of fact. *Lambert v. Lambert* 77 R.I. 463(R.I., 1950).

Caito presented actual evidence that Citibank was not a trustee for the trust named in the complaint interest, which raised a genuine issue of material fact. The Court committed error by evaluating the evidence when Caito had adduced a certified record of a government agency and found a case in he actually named trust was a Plaintiff in a suit brought by its servicer.  Delivery cannot be made to a non-existent entity.   The issue of whether the trust existed under this name was a

disputed issue of material fact, which could not decided by Summary Judgment.

Thus the Judgment granting Summary Judgment should be reversed on this issue.

**THE MOTION TO STRIKE SHOULD HAVE BEEN GRANTED AND THE COURT SHOULD NOT HAVE CONSIDERED AN AFFIDAVIT IN SUPPORT OF SUMMARY JUDGMENT NOT FILED WITH THE MOTION**

The District Court committed error by accepting an affidavit which was not filed with the Motion for Summary Judgment. Caito filed a Motion to Strike the affidavit of Sony Prudent citing the case of U.*S. Bank Trust v. Jones*, 925 F. 3d 534 (1st Circuit, 2019). The holding in *Jones* mandates that the affidavit of Sony Prudent is defective because it does not verify anything about the boarding or the verification of the records of Homeward Residential (formerly American Home Mortgage Servicing, Inc., incorporated in Delaware on September 6, 2007 as indicated in its filing with the Rhode Island Secretary of State on December 18, 2007, attached to Caito's affidavit (Appendix 31). This corporation was not the original American Home Mortgage Servicing, Inc., the original servicer, which filed a Chapter 11 Bankruptcy Petition on August 6, 20007 in case number 07-11050 in the United States Bankruptcy Court for the District of Delaware. (Appendix 32). Thus this mortgage loan has been serviced by four entities:

(1) The first American Home Mortgage Servicing, Inc. until its bankruptcy on August 6, 2007.

(2) The second American Home Mortgage Servicing, Inc. from its creation on September 6, 2007 until its name change of Homeward Residential, Inc. on May 31, 2012 as reflected in the record of the Rhode Island Secretary of State. (Appendix 33)

(3)     Ocwen Loan Servicing, LLC from March 1, 2013 to June 1, 2019.

(4) PHH Mortgage Services from June 1, 2019.

The District Court erroneously decided a factual dispute and found that there had never been a third party transfer of servicing and that Jones did not apply to this case.    However there is a factual dispute as to the relationship between the servicers.  American Home Mortgage Servicing was a different entity than American Home Mortgage Servicing, Inc.  No documents were included in the second affidavit of Sony Prudent and Citibank's Response memorandum included references to additional hearsay, such as newspaper articles, internet website articles and other non-authenticated documents, which clearly are hearsay. The second affidavit does not reference the servicing records of the original American Home Mortgage Servicing, which did not merge with the new company named American Home Mortgage Servicing, Inc. which was a different entity.  It also ignored the fact that Ocwen Loan Servicing, LLC was a separate entity from Homeward Residential/AHMSI, as there was no merger.  He did not explain how the records of Homeward/AHMSI regarding this loan were confirmed and verified by  Ocwen when servicing was transferred.   He did not explain how the records of

American Home Mortgage were confirmed and verified by AHMSI when servicing was transferred. He did not explain how the records of Ocwen and its RealServicing electronic system of record, which was found to be inherently inaccurate by the three New York Consent Orders (Appendix 33, 34 and 35) were confirmed and verified when PHH took over servicing of Ocwen and transferred the records from Ocwen's servicing platform to its own servicing platform. The Rhode Island Consent Order with Ocwen (Appendix 36) was entered onSeptember 28, 2017. In that Order, which was entered into by 49 other states, Ocwen agreed that it would not board any new loans onto the REALServicing platform at any time and would develop a new servicing platform and transfer all its loans to that servicing platform or make a change in the servicing program by acquisition or merger.  That is in fact what Ocwen did by transferring its servicing by a merger with PHH as suggested by Citibank. This transfer of servicing however involved a new program. This second affidavit, not filed with the Motion for Summary Judgment did not address any of the hearsay issues in *Jones*, in which the Court allowed the records to be considered because the servicer employee relied on the accuracy of the mortgage history and took measures to verify the same and the servicer incorporated the previous servicer's records into its own database and place its  own financial interests at stake by relying on those records and that is

took steps to review the previous servicer's records in a way that assured itself of the accuracy of those records. *Jones* at p.538. No such testimony was presented in either affidavit and no reference was made to the verification or the procedures followed to verify accuracy when the records were purportedly integrated. All this affidavit consisted of was a recital of the business exception to the hearsay rule with no factual basis. Thus it was error for the Motion to Strike to have been denied and either affidavit considered. Caito, unlike the homeowner in *Jones* disputed the actual amount of the obligation of the arrearage due to the failure of Citibank to assert the correct amount of the obligation to cure the default. The Court erroneously stated:

but if Ms. Caito can prove that some or any of the fees, expenses, or costs were improperly charged, they can be resolved through an accounting following the judicial foreclosure order.

Citibank had the burden of proof in a foreclosure case to strictly comply with the mortgage and note and to provide an accurate default and acceleration notice. It cannot provide inaccurate information as it would not meet the precondition to acceleration and sale. Providing the wrong amount is fatal to its case and warrants reversal of the Judgment and dismissal of the case with prejudice.

# CONCLUSION

*Woel* made it clear that notices prior to foreclosure must be accurate and will be strictly construed as contractual condition precedents to the exercise of the statutory power of sale and to judicial foreclosures. For the reasons stated in this Brief, Summary Judgment was improperly granted in favor of the Plaintiff should be granted. The failure to provide a Default Notice, which contained an accurate statement alone for amounts due for principal and interest and the failure to accelerate the promissory note renders this complaint subject to dismissal on those grounds alone. There could not be strict compliance with the loan documents by including anything other than principal and interest in the default letter on that basis alone. *Woel* distinguished between cure and reinstatement after acceleration. The Supreme Court's distinction between these terms clearly establishes that the District Court erred by stating:

a challenge to charges on a mortgage account incident to foreclosure are not a hurdle to Citibank's pursuit of judicial foreclosure. Ms. Caito has not paid any of these monies, but if Ms. Caito can prove that some or any of the fees, expenses, or costs were improperly charged, they can be resolved through an accounting following the judicial foreclosure order. The deadline that Citibank set to cure the default in its notice—June 17, 2018— passed without Ms. Caito making any attempt to get the Mortgage reinstated.

*Woel* clarified that exercise of any options under the note and mortgage required strict compliance. As a matter of law, Caito was not required to reinstate on June

17, 2018 as reinstatement relates only to an accelerated note, not the right to cure the exact amount of the principal and interest in arrears. For this reason and the other reasons cited in this Brief, the grant of Summary Judgment was erroneous under Rhode Island law and should be reversed and the case dismissed with prejudice.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. 32(a) because this brief contains 7595 words, excluding the parts of the brief exempted by Fed.R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. APP. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14 points Time New Roman.

September 28, 2020                  APPELLANT-DEFENDANT
KATHERINE CAITO
By her Attorney

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw75@gmail.com

## CERTIFICATION OF SERVICE

I hereby certify that a copy of this Brief of Appellant was served on counsel of

record vis the Court's ECF system on September 28, 2020.

/s/ John B. Ennis, Esq.

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

CITIBANK, N.A AS TRUSTEE FOR AMERICAN HOME MORTGAGE
ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH
CERTIFICATES SERIES 2006-3

Plaintiff-Appellee

VS

KATHERINE L. CAITO
Defendant-Appellant

On Appeal from a Final Judgment Entered
After an Opinion and Order Granting Summary Judgment and
Denying a Motion to Strike
Entered in the United States District Court for the District of Rhode Island

## ADDENDUM OF APPELLANT
## KATHERINE L. CAITO

John B. Ennis
Rhode Island Bar # 2135
Court of Appeals Bar # 47641
John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920
Tel: (401)943-9230
Fax: (401)679-0035
Email: Jbelaw75@gmail.com

# TABLE OF CONTENTS OF APPENDIX

Cover Page ..................................... page 1

Table of Contents ............................... page 2

Order dated December 18, 2019 ..................... page 3

Notice of Appeal ............................... page 12

Judgment dated January 27, 2020.................... page 13

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CITIBANK, N.A. AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-3, Plaintiff, <br><br> v. <br><br> KATHERINE CAITO, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) C. A. No. 18-427-JJM-LDA |

## ORDER

Plaintiff Citibank, N.A. as Trustee for American Home Mortgage Assets Trust 2006-G, Mortgage-Backed Pass-Through Certificates Series 2006-3 ("Citibank") and Defendant Katherine Caito have filed Cross-Motions for Summary Judgment, each seeking the Court's determination in their favor on the propriety of a judicial foreclosure. Citibank seeks a judicial order of foreclosure on Ms. Caito's property in Westerly, Rhode Island. ECF No. 21. Ms. Caito seeks dismissal of Citibank's complaint for failure to meet a condition precedent of the Mortgage in that it failed to comply with the pre-foreclosure notice process. ECF No. 22. Ms. Caito has also moved to strike an affidavit filed in support of Citibank's cross-motion for summary judgment. ECF No. 40.

## I. FACTS & BACKGROUND

The Court will briefly review the relevant facts.

Ms. Caito received a $4,500,000 loan on June 6, 2006 with a Note to American Brokers Conduit ("ABC"). She was obligated to repay the Note by a Mortgage Citibank granted on the property to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for ABC and its successors and assigns. MERS assigned the Mortgage to Citibank as Trustee. Ocwen Loan Servicing, LLC ("Ocwen") was the servicers of the Mortgage on behalf of Citibank as Trustee.

Ms. Caito stopped paying on the Mortgage after April 2012. She has been in default since May 1, 2012. Ocwen issued the notice of default on May 11, 2018. The notice stated that Ms. Caito was in default, told her how to cure the default, that she had to cure the default by June 17, 2018, and that failure to cure on or before that date may result in acceleration of the Note. The default notice also stated that she had the right to reinstate the loan and the right to bring a court action to protest the default determination. She did not cure the default; Citibank filed this suit for judicial foreclosure, seeking a court order authorizing it to foreclose.

## II. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Once this is done, Fed. R. Civ. P. 56(c) requires that summary judgment be granted if there is no issue as to any material fact and the moving party

2

4

is entitled to judgment as a matter of law. *Id.* The parties have both filed motions for summary judgment, but "[t]he presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006). In evaluating cross-motions, the court must determine whether either party is entitled to judgment as a matter of law based on the undisputed facts. *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009).

### III. DISCUSSION

#### A. Motion to Strike Sony Prudent Affidavit

Because the Court must consider the evidence put forth in Sony Prudent's Affidavit in ruling on Citibank's Motion for Summary Judgment, it will first consider Ms. Caito's Motion to Strike. ECF No. 40. She argues that Mr. Prudent's affidavit is hearsay under Rule 803(6) of the Federal Rules of Evidence because he did not mention that the mortgage rate had been modified, he does not verify the chain of servicers involved in the Mortgage and whether Ocwen verified the records of former servicers before integrating those into its own business records, and Ocwen has admitted in Consent Orders filed in New York and Rhode Island that its records are inherently inaccurate. Essentially, Ms. Caito does not appear to dispute the default, just the calculation of what she owes because the affidavit does not include the details of the sources of Ocwen's figures.

Sony Prudent is a loan analyst for Ocwen who submitted an affidavit in support of Citibank's motion. Citibank submitted a Supplemental Affidavit in response to concerns raised in Ms. Caito's motion, clarifying the mergers,

3

acquisitions, and name changes (not third-party transfers) relating to the servicing of her loan.[1] After reviewing the affidavits in light of Federal Rule of Evidence Rule 803(6), the Court finds that Mr. Prudent's affidavits are not hearsay and are reliable for the purpose of this motion. The affidavits discuss Mr. Prudent's background, what records he reviewed that Ocwen maintained in the ordinary course of business, the specific details of Ms. Caito's Mortgage, her default, the approximate amount Ms. Caito owes in principal and interest, and the amount she owes in fees, costs, and expenses since her default in May 2012. His statements are based on his personal knowledge and review of the integrated business records maintained in the ordinary course of business.

Ms. Caito's Motion to Strike is DENIED. ECF No. 40.

### B. Cross-Motions for Summary Judgment

In this action, Citibank seeks a judicial foreclosure. Section 34-27-1 of the Rhode Island General Laws states: "[a]ny person entitled to foreclose the equity of redemption in any mortgaged estate, whether real or personal, may prefer a complaint to foreclose it, which complaint may be heard, tried, and determined

---

[1] Submission of the Supplemental Affidavit was in response to Ms. Caito's citation to the First Circuit Court of Appeal's decision in *U.S. Bank Trust, N.A. v. Jones* as support for her argument that Mr. Prudent's affidavit contains inadmissible hearsay. 925 F.3d 534 (1st Cir. 2019). The Court's analysis in *Jones* does not apply to the facts of Ms. Caito's case. In that case, Jones argues that mortgage loan evidence was not admissible because it included third-party records (a result of assignments and transfers of the mortgage loan) not properly integrated into the records of the offering entity in violation of Rule 803(b) of the Federal Rules of Evidence. *Id.* at 537-38. Citibank has shown in the Supplemental Affidavit that there was no third-party transfer of information on Ms. Caito's loan requiring that business records be integrated.

4

according to the usages in chancery and the principles of equity." Through its motion for summary judgment, Citibank seeks this Court's determination that there are no disputed issues of material fact such that the judicial foreclosure against Ms. Caito's property in Westerly can proceed.

In her cross-motion for summary judgment, Ms. Caito argues that the case for judicial foreclosure should be dismissed on grounds: that Citibank lacks standing to foreclose, that the Amended Complaint does not reflect that the Note and Mortgage were modified, the May 11, 2018 default notice from Citibank to Ms. Caito did not strictly comply with Paragraph 22 of the Mortgage and stated inaccurate information, and her account was charged inappropriate fees in default.

In the face of these arguments, the Court finds the following undisputed facts: 1) Citibank is the holder of Ms. Caito's Note and Mortgage; 2) Ms. Caito has defaulted on the Note and breached the Mortgage by failing to make any payment since April 2012; 3) Citibank, through its loan servicer, issued a notice of default to Ms. Caito before beginning this judicial foreclosure action that strictly complied with the Paragraph 22 requirements in the Mortgage; and 4) the deadline that Citibank set to cure the default in its notice—June 17, 2018—passed without Ms. Caito making any attempt to get the Mortgage reinstated. The Court will explain these findings below but find they are in Citibank's favor so that its motion for summary judgment is GRANTED. The Court rejects Ms. Caito's defenses in support of her motion as lacking in factual foundation.

*1. Citibank as Trustee Holds the Note and Mortgage*

MERS, as nominee for ABC, assigned the Mortgage to Citibank, as Trustee. The Pooling and Servicing Agreement that governs the trust into which her Mortgage was deposited identified Citibank as Trustee for the trust named American Home Mortgage Assets LLC, Mortgage-Backed Pass-Through Certificates, Series 2006-3 so authorizes and appoints Citibank to pursue this action as Trustee. *Glassie v. Doucette*, 157 A.3d 1092, 1099-1100 (R.I. 2017) (holding that trustee to a trust is the party who pursues proceedings on behalf of the trust and its beneficiaries against a third party). Citibank thus has standing to sue and is authorized to act on behalf of the trust and Citibank as Trustee is the holder of the Mortgage.

### 2. Ms. Caito Defaulted on the Note

There is no dispute that Ms. Caito has made no payments on her Mortgage since April 2012. Her failure to make those payments resulted in default on the Note and breach of the Mortgage.

### 3. Citibank Issued the Notice of Default

Ocwen Loan Servicing, LLC ("Ocwen") was the loan's servicer. Ocwen issued the May 11, 2018 notice of default to Ms. Caito as attorney-in-fact for Citibank under a limited power of attorney. A foreclosure sale is valid where the servicer, acting under power of attorney, properly mailed notice of sale to the borrowers because a servicer, as agent for the lender, acquires all rights possessed by the lender, including the right to exercise the power of sale. *Breggia v. Mortg. Elec. Registration Sys.*, 102 A.3d 636, 641 (R.I. 2014); *252 Wolfrock Rd. Realty Redemption Co. v. Wells Fargo Bank N.A.*, C.A. No. 16-126M, 2016 WL 3766297, at *2 (D.R.I. July 11, 2016).

### 4. The Notice of Default Complied with the Mortgage Terms

The notice of default complied with Paragraph 22 of the Mortgage. The notice stated that Ms. Caito was in default, told her how to cure the default, that she had to cure the default by June 17, 2018, and that failure to cure on or before that date may result in acceleration of the Note. The default notice also stated that she had the right to reinstate the loan and the right to bring a court action to protest the default determination. This is what Paragraph 22 requires.[2]

Ms. Caito argues in her motion that the notice provides no specific date to cure the default because it quotes "on or before" June 17, 2018, but as Citibank points out, the "on or before" language it used in the notice tracks the language of Paragraph 22(d). Paragraph 22 also does not limit how Citibank can demand payment so Ms. Caito's argument that the fact that Citibank asked that Ms. Caito cure the default using certified funds does not render its notice defective.

Ms. Caito's final argument on the notice relates to the arrearage amount. She argues that Citibank's calculations are incorrect because it ignored the Mortgage Modification Agreement ("MMA") and so did not use the correct interest rate. But the MMA terms do not alter any obligation under the Mortgage beyond providing an

---

[2] Ms. Caito cites *Thompson v. JPMorgan Chase Bank, N.A.*, 915 F.3d 801 (1st Cir. 2019) in support of her argument that Citibank's notice of default violated the Mortgage because it was deceptive. On a petition for rehearing, the First Circuit Court of Appeals withdrew its order, vacated the judgment, and certified a question to the Massachusetts Supreme Judicial Court about whether language in the default notice was deceptive given Chase's argument that the allegedly deceptive language was required by a state banking regulation. Because that case was based on interpretation of Massachusetts, not Rhode Island law and the opinion has been withdrawn, the Court declines to consider it here.

7

adjustable rate rider; the fact that the mortgage rate had been modified does not affect Citibank's ability to pursue judicial foreclosure. Ms. Caito also challenges Citibank quoting her an approximate amount due, essentially arguing that Citibank cannot foreclose because it does not know the exact amount due on the Note. There is no evidence that Citibank's quoted amount is incorrect beyond Ms. Caito's asserted calculations based on how she views her Mortgage terms. This is not enough to defeat summary judgment in this judicial foreclosure case. Moreover, the Court credits Citibank's explanation about why it provides borrowers in default with an approximated amount owed—that is, it can only provide an approximation of what is owed because the amount changes daily.

### a. Fees, Expenses, and Costs

Also related to the amount owed in default, Ms. Caito objects throughout her cross-motion and response to Citibank's motion that the costs, fees, and expenses charged to her account are improper. First, she presents no evidence of this and Citibank has provided some account history showing these charges are justified; her opinion alone on the validity of these expenses cannot support her challenge to this judicial foreclosure action. In any event, a challenge to charges on a mortgage account incident to foreclosure are not a hurdle to Citibank's pursuit of judicial foreclosure. Ms. Caito has not paid any of these monies, but if Ms. Caito can prove that some or any of the fees, expenses, or costs were improperly charged, they can be resolved through an accounting following the judicial foreclosure order.

8

10

The deadline that Citibank set to cure the default in its notice—June 17, 2018—passed without Ms. Caito making any attempt to get the Mortgage reinstated. Because Citibank has met the legal requirements to begin the foreclosure process and none of Ms. Caito's defenses are effective in the face of that proof, the Court finds that Citibank's motion in support of an order of judicial foreclosure should be GRANTED.

IV.    CONCLUSION

The Court GRANTS Citibank's Motion for Summary Judgment on Count I of its First Amended Complaint for Judicial Foreclosure (ECF No. 21) and DENIES Ms. Caito's Motion for Summary Judgment (ECF No. 41) and her Motion to Strike the Affidavit of Sony Prudent and Exhibit A. ECF No. 40. The Court enters judgment in Citibank's favor so that it may proceed with foreclosure of the Westerly, Rhode Island property. Citibank should present a form of judgment, after conferring with opposing counsel.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

December 18, 2019

9

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CITIBANK, NA AS TRUSTEE
_____

                          Plaintiff              Case No. __18-CV-427JJM__
              v.

KATHERINE L. CAITO
_____

                          Defendant

## NOTICE OF APPEAL

Notice is hereby given that __KATHERINE L. CAITO__ ,
                                                    Name

the __DEFENDANT__ in the above-referenced matter, hereby appeals to the
         Party type

United States Court of Appeals for the First Circuit from the __3 ORDERS- RE: SUMMARY__
                                                              Final judgment or description of order

__JUDGMENT MOTION TO STRIKE__ entered in this action on __DECEMBER 18, 2019__ .
                                                                Date of entry

                                        Respectfully submitted,

__John B. Ennis__                       /S/ JOHN B. ENNIS
Name                                    Signature

__2135__                                __01/17/2020__
Bar Number                              Date

__John B. Ennis, Esq__                  __(401)943-9230__
Firm/Agency                             Telephone Number

__1200 Reservoir Avenue__               __(401)946-5006__
Address                                 Fax Number

__Cranston, RI 02920__                  jbelaw75@gmail.com
City, State, Zip Code                   E-mail Address

12

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CITIBANK, N.A., AS TRUSTEE FOR
AMERICAN HOME MORTGAGE ASSETS
TRUST 2006-3, MORTGAGE BACKED
PASS-THROUGH CERTIFICATES SERIES
2006-3,

        Plaintiff,

v.                                                    C.A. No. 1:18-cv-00427-JJM

KATHERINE L. CAITO,

        Defendant,

v.

INTERNAL REVENUE SERVICE,

        Interested Party.

## JUDGMENT

In light of Summary Judgment having been entered in favor of the Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 ("Plaintiff"), against the Defendant, Katherine L. Caito ("Defendant"),

IT IS HEREBY ORDERED, ADJUDGED and DECREED as follows:

1.  Plaintiff is the current holder of that certain promissory note given by Defendant to American Brokers Conduit ("ABC") in the original principal amount of $4,500,000 dated June 6, 2006 (the "Note").

2.  Plaintiff is the current owner of the mortgage given by Defendant to ABC in the original principal amount of $4,500,000 dated June 6, 2006 and recorded in the Town of

101006P304981581.V1

13

Westerly Land Evidence Records on June 12, 2006 at Book 1541, Page 252 (the "Mortgage") by virtue of an assignment of said Mortgage by Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for ABC, to the Plaintiff recorded with said Land Evidence Records on October 9, 2012 at Book 1932, Page 724.

    3.    The Mortgage encumbers the real estate known as 16 Yosemite Valley Road, Westerly, Rhode Island (the "Property")

    4.    The Note is in default as the Defendant, Katherine L. Caito, has not maintained monthly payments to PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, as loan servicer for the Plaintiff, in accordance with the requirements of the Note and the Mortgage.

    5.    Plaintiff is hereby authorized to conduct a public sale of the Property pursuant to his Judgment and the default remedies provided in the Note and Mortgage including, without limitation, paragraph 22 of the Mortgage.

    6.    The public sale shall be conducted no more than 120 days from the date of this Judgment except as otherwise ordered, modified or extended by the Court with Plaintiff publishing and giving notice of such sale to such persons and in such manner as provided for in R.I. Gen. Laws §34-27-4(a) and 4(b) respectively.

    7.    Plaintiff is authorized to credit bid at such public sale up to the amount of the total indebtedness due under the Note and Mortgage as of the date of sale including its attorneys' fees and costs incurred in this action and in conducting such sale.

    8.    Plaintiff shall, within 120 days of such public sale, file a motion with this Court for approval of such sale with such motion to include proof of publication and mailing in a manner consistent with the requirements of said §34-27-4(a) and 4(b), auctioneer's report or

2

1010069304981581.V1

14

affidavit of sale and copy of executed foreclosure deed conveying title to the high bidder (or if such high bidder fails to perform in accordance with the Plaintiff's Memorandum of Sale signed by such high bidder at the sale, then to the penultimate high bidder) at such sale. Such foreclosure deed shall not be deemed to have been delivered to the grantee named therein and Plaintiff shall not present the foreclosure deed to the Land Evidence Records for recording until this Court issues an order approving such sale.

9.    Plaintiff's public sale of the Property in a manner consistent with the requirements of R.I. gen. Laws §34-27-4(a) and 4(b) and execution and recording of the foreclosure deed relative to such sale running in favor of the successful high bidder (or penultimate high bidder as provided in the Plaintiff's Memorandum of Sale) shall convey title to the Property to such high bidder or penultimate high bidder forever free and clear of all liens, mortgages, encumbrances, rights of redemption and any other right, title or interest held or claimed by the Defendant and any other person or entity who records or who has recorded an interest in or a lien against the Property.

10.    This judgment shall be effective against the Defendant and against all persons or entities, if any, who record or have recorded an interest in or lien against the Property.

11.    The foreclosure sale and Plaintiff's delivery of a foreclosure deed to the successful high bidder at such public sale shall extinguish all right, title, interest, lien, mortgage or claim of the Defendant to this action and of any other person or entity who records or who has recorded a lien or interest in the Property.

ENTER:                                    BY ORDER OF:

_____                   _____
Presiding Justice   1/27/20               Clerk

3                                         101000P30498158L.V3

15

PROPOSED BY:

CITIBANK, N.A., AS TRUSTEE FOR
AMERICAN HOME MORTGAGE
ASSETS TRUST 2006-3,
MORTGAGE BACKED PASS-
THROUGH CERTIFICATES SERIES
2006-3,

By Its Attorneys,

/s/ Samuel C. Bodurtha
Samuel C. Bodurtha, Bar No. 7075
HINSHAW & CULBERTSON LLP
56 Exchange Terrace
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
Email: sbodurtha@hinshawlaw.com

Dated:     January 27, 2020

## CERTIFICATE OF SERVICE

I, Samuel C. Bodurtha, hereby certify that the documents filed through the ECF system
will be sent electronically to the registered participants as identified on the Notice of Electronic
Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on
January 27, 2020.

/s/ Samuel C. Bodurtha
Samuel C. Bodurtha

4

1010069304981581.V1

16